**UNITED STATES of America, Appellee,**

v.

**Michael BADESSA, Jr.,
Defendant, Appellant.**

**No. 83–1928.**

United States Court of Appeals,
First Circuit.

Argued June 1, 1984.

Decided Jan. 23, 1985.

Michael F. Natola, Everett, Mass., with whom Alfred Paul Farese, Everett, Mass., was on brief, for defendant, appellant.

James E. O'Neil, Asst. U.S. Atty., Boston, Mass., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before BOWNES and BREYER, Circuit Judges, and DOYLE,* Senior District Judge.

JAMES E. DOYLE, Senior District Judge.

Defendant was indicted on three counts: the first and second, for possession of cocaine and marijuana, respectively, with intent to distribute, and the third for receiving a firearm after having been convicted of a felony. On the third count, a defense motion for a directed verdict was granted; the jury found defendant not guilty on the second count and guilty on the first (cocaine). This appeal is taken from the conviction and sentence (3 years' imprisonment and a $5000 fine) on count one. Defendant-appellant contends the district court erred in denying a suppression motion; in denying a motion for mistrial on the ground of prosecutorial misconduct; and in implicitly denying a subsequent motion for mistrial on the ground of prejudice in the trial on count one, resulting from revelation to the jury, in connection with eventually dismissed count three, that defendant had once been convicted of a crime.

I.

Promptly following arraignment, defendant moved to suppress all items seized in the course of a warranted search on February 6, 1983. The principal ground was that there was no probable cause for issuance of the warrant.[1] At a hearing on the motion to suppress, the evidence was that the search warrant had been issued by a United States Magistrate on the basis of a handwritten affidavit executed February 6, 1983. The entire content of the affidavit follows:

AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT AUTHORIZING ENTRY INTO:

The basement, first, and second floor of a two-family three-story wooden frame building, being yellow in color with white trim, located at 272 Knight Street, Providence, R.I. I, Vincent A. Furtado, a Special Agent with the Drug Enforcement Administration of the U.S. Dept. of Justice, do hereby depose and state:

1. Since July, 1982 I have been assigned to the District of Rhode Island to direct the operations of the Rhode Island Drug Task Force, which is a Federal, State, and Local Law Enforcement effort designed to interdict controlled substances being smuggled into the District of Rhode Island.

2. In that capacity, I have become acquainted with certain individuals who have been the subjects of local law enforcement investigation efforts.

3. Amongst those individuals who have been the subjects of local law enforcement efforts is one Michael Badessa, Jr. who has also been the subject of the investigative efforts of the local office of the D.E.A. located in Providence, RI.

4. I have determined as a result of my inquiry of the New England Telephone Company that Michael Badessa, Jr. is a subscriber to a telephone located at 272 Knight Street, Providence, RI.

5. Fellow agents of the R.I. Drug Task Force have advised me that Michael

---

* Of the Western District of Wisconsin, sitting by designation.

1. Other grounds for suppression, initially urged, are not pursued on this appeal.

Badessa, Jr. has an automobile registered to him by the State of Rhode Island bearing the number UT–6, said registration number is assigned to Michael Badessa, Jr. at the address of 272 Knight Street, Providence, RI.

6. On February 4, 1983 I received a telephone call from an unidentified individual who advised me that Michael Badessa, Jr. would be travelling from Florida to Providence, RI with a large shipment of cocaine.

7. As a result of the aforementioned information I, along with fellow Drug Task Force Agents, initiated surveillance of 272 Knight St., Providence, RI on Feb. 5, 1983.

8. On February 5, 1983 I observed Michael Badessa, Jr.'s automobile bearing a R.I. registration UT–6 parked in the driveway of 272 Knight Street, Providence, RI where he occupies the one lower level unit of that two-family residence.

9. Michael Badessa, Jr. is also known by me to be an associate of Joseph Tibari who was most recently arrested by the Providence Police Dept. on Jan. 30, 1983 for possession of cocaine with intent to distribute that substance.

10. The aforementioned arrest of Joseph Tibari was executed by the Providence Police at the social club located at Decatur Square, Providence, RI which is at the intersection of Knight and Carpenter St. approximately one block from the residence of Michael Badessa, Jr. located at 272 Knight Street, Providence, RI.

11. On February 6, 1983 I was advised by the Providence Police Dept. that a confidential informant, whose information has proved reliable on prior occasions, that the confidential informant entered these subject premises at 272 Knight St., Providence, RI on February 6, 1983 and negotiated with Michael Badessa, Jr. for the purchase of a quantity of cocaine which Michael Badessa, Jr. had available for sale at 272 Knight St.

12. Based upon the foregoing, I have probable cause to believe that evidence of controlled substance violations as defined within Title 18 U.S.C. 841(a)(1) are located within 272 Knight St. at the residence of Michael Badessa, Jr.

At the conclusion of the evidentiary hearing, the district court denied suppression, holding from the bench that the affidavit provided probable cause to believe there was a controlled substance within the basement, first and second floors of the residence at 272 Knight Street. The court's statement consisted principally of a summary of the content of the affidavit. The court emphasized Furtado's experience. The court observed that the Furtado affidavit reflected a piecing together of various bits of information by an experienced law enforcement officer. The court emphasized paragraph 11, commenting that the magistrate "could realistically rely on the authenticity of information furnished to [Furtado] by the Providence Police Department ... and could expect that the Providence Police Department was going to provide reliable information to [Furtado]."

██ We are mindful that the magistrate was bound to refrain from "excessively technical dissection of informant's tips," *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983), and from "judging bits and pieces of information in isolation." *Massachusetts v. Upton*, ── U.S. ──, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984). He was bound to consider the Furtado affidavit "in its entirety, giving significance to each relevant piece of information and balancing the relative weights of all the various indicia of reliability (and unreliability) attending the tip." *Upton*, 104 S.Ct. at 2088. We are mindful as well that in the course of reviewing the magistrate's decision to issue the search warrant, the district court was bound to adopt, and we must adopt, this mode of analysis of the affidavit. The district court and we are under a further inhibition, "not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 104

S.Ct. at 2086; *Illinois v. Gates*, 103 S.Ct. at 2331.

Even in strict fidelity to this severe restraint upon our appellate function, we find uncomfortably close the question whether there is substantial evidence in the record supporting the magistrate's finding of probable cause. The Furtado affidavit's sufficiency hangs on the interplay of four factors: (1) the February 4 tip to Furtado; (2) the February 6 tip to the Providence Police Department; (3) defendant's occupancy of 272 Knight Street; and (4) defendant's association with Joseph Tibari. The February 6 tip supports the February 4 tip: as of February 6, defendant was in Providence negotiating a sale of cocaine, as predicted by the February 4 informant. The February 6 tip is supported by: (a) the February 4 tip; (b) the vouching by the Providence police department that information given on prior occasions by the February 6 informant had proved reliable;[2] and (c) independent evidence that defendant did occupy the building in which the informant says defendant was present on February 6. Both tips enjoy a smidgen of support from Furtado's knowledge that defendant is "an associate of Joseph Tibari" and that Tibari had been arrested—not convicted—seven days earlier for possession of cocaine with intent to distribute it.

It cannot be ascertained from the record, and it may have been beyond the capacity of Furtado and the Providence police to determine, whether the February 4 informant and the February 6 informant are the same person. On the one hand, cause is more probable if a bit of information is furnished by one person and a compatible bit by another. On the other hand, unlike the February 4 informant, the February 6 informant is vouched for by Providence police; if it was he or she who had also provided information on February 4, the February 4 information may be thought more reliable than it might be otherwise.

The magistrate could not properly have attached any significance to Furtado's allegations that: defendant had been the subject of investigative efforts by local authorities and D.E.A.; Tibari had been arrested on a previous occasion or occasions on an unspecified charge or charges; and the recent arrest of Tibari had occurred at a social club located approximately one block from 272 Knight Street.

The only significance we can perceive in the allegations concerning defendant's subscription to a telephone at 272 Knight Street and the presence of his automobile in the driveway is that he resided there and it was he, not someone else, with whom the February 6 informant negotiated in that building. The allegation concerning initiation of surveillance of 272 Knight Street on February 5 and observation of defendant's automobile there that day is non-probative of defendant's absence—possibly in Florida—on February 4 or earlier.

The district court's emphasis on Furtado's experience seems to have reflected Furtado's testimony at the suppression hearing that he had been employed for approximately 13 years by D.E.A. as a special agent. However, the affidavit presented to the magistrate did not contain this information. We appreciate that when seen through the eyes of persons experienced in the enforcement of laws relating to controlled substances, certain conduct and events may take on significance hidden from the inexperienced. But this attribute of experience has no discernible role to play in the circumstances here. More to the point, special perception born of experience of law enforcement officers is inoperative unless it is communicated by them to the decision-maker, the magistrate. None was communicated by Furtado.

We remark the ambiguity in the critical portion of the February 6 tip. For a search warrant, as distinct from an arrest warrant, the key was not whether defendant was engaged in unlawful activity at 272 Knight Street, such as negotiating sales of cocaine, but whether physical evidence of criminal activity was present there. The

---

**2.** The affidavit is ambiguous whether the vouching is by the Providence police department or by Furtado. The syntax suggests it is the Providence police.

magistrate was to have been forgiven had he made a "practical, common-sense decision," *Illinois v. Gates,* 103 S.Ct. at 2332, that in the affidavit Furtado was putting forward D.E.A.'s best foot. Thus, if the February 6 informant had told the Providence police that at 272 Knight Street he had seen cocaine, or a substance physically resembling cocaine, or a substance represented by defendant to be cocaine, the magistrate might have concluded, Furtado would have said so. Furtado was able to allege, or chose to allege, that the February 6 informant had reported only that at 272 Knight Street the informant had negotiated with defendant "for the purchase of a quantity of cocaine which Michael Badessa, Jr. had available [somewhere?] for sale [sometime?] at 272 Knight St." It is not excessively technical to "dissect" the tip itself, as contrasted with the evidence lending it probability. Nevertheless, we recognize the ambiguity could be resolved in either direction. The magistrate was free to construe the allegation, and likely did construe it, to be that the informant had implied he or she had observed cocaine at 272 Knight Street on February 6 or had been told by defendant that it was present, there and then.

█ We conclude that the coincidence of the two tips, the police vouching for the past performance of the February 6 tipster, and the independent evidence of defendant's occupancy of 272 Knight Street and defendant's association with a person recently arrested on a similar charge constitute substantial evidence supporting the magistrate's decision to issue the search warrant. Because the warrant was valid, it is unnecessary to decide whether the resulting evidence would be admissible in any event under *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).[3]

## II.

In his search warrant affidavit Furtado alleged that fellow agents on the Rhode Island Drug Task Force had advised Furtado that defendant had an automobile registered to him by the state bearing number UT–6 and that this registration number had been assigned to defendant at the 272 Knight Street address.. Whether this information was accurate was clearly within defendant's knowledge. So far as the record on this appeal discloses, silence prevailed on the point when defendant attacked the Furtado affidavit in the motion to suppress and in the course of the evidentiary hearing on that motion. At trial, in the presence of the jury, on cross-examination of Furtado, defendant elicited testimony that the automobile was registered at the time to Michael Badessa, Sr., the father of defendant Michael Badessa, Jr., and that at some time after February 6, Furtado had informed the prosecutor the information in the affidavit was inaccurate in this respect. Defendant's motion for a mistrial on the ground of prosecutorial misconduct, made at this juncture, was denied. Defendant contends on this appeal that denial of a mistrial was erroneous in light of *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and so gravely prejudicial as to require his conviction to be set aside.

Defendant raised this issue below so obliquely and opaquely that there was never an occasion on which the underlying circumstances were explored methodically, resulting in explicit factual findings. Defendant seemed to recede from an initial suggestion that Furtado had testified falsely when he stated that fellow agents in the task force had advised him the state had registered to defendant an automobile

---

**3.** In *United States v. Little,* 735 F.2d 1049 (8th Cir.1984), convictions were vacated because the affidavit for a search warrant was held to have been insufficient, even in the wake of *Illinois v. Gates,* partly because justification for reliance on informants' tips had not been demonstrated. There are similarities in this respect between *Little* and the case before us, but in *Little* there

was nothing to compare with a tip on one day, predicting a future event, and another tip, two days later, confirming the prediction. On rehearing, following *Leon,* the eighth circuit set aside its reversal of the convictions, despite its continuing awareness of the deficiencies in the affidavit. *United States v. Sager,* 743 F.2d 1261, 1266 (8th Cir.1984).

bearing the number UT–6. Also, defendant seemed to acknowledge that Furtado had acted properly in advising the prosecutor of the inaccuracy when Furtado became aware of it. It remains obscure how Furtado's fellow agents came by the inaccurate information, and in the district court the prosecutor's representations concerning the non-disclosure of the inaccuracy were equivocal. If we were to consider further inquiry and fact-finding called for, the district court would be the appropriate forum. However, there is no need of it because, even if defendant's version of the sequence is assumed to be accurate, he has suffered no significant disadvantage.

■ First, the sufficiency of the Furtado affidavit to support issuance of the search warrant would be unaffected by elimination of the statement concerning the person in whose name the automobile was registered. That statement bore only on defendant's occupancy of 272 Knight Street, a fact independently supported by defendant's subscription to telephone service there. Second, at trial, the earlier inaccuracy was totally insignificant in terms of defendant's guilt or innocence. Its significance, such as there was, was as an instrument of impeachment of Furtado as a witness at trial. Defendant chose to use it then and for that purpose, and enjoyed its full benefit. There is no reasonable basis to conclude that the absence of an earlier acknowledgement of the inaccuracy of this single allegation in the Furtado affidavit had the effect of depriving defendant of a fair trial.

### III.

When one of the counts in a multi-count indictment alleges that the defendant "had been convicted of a crime punishable by imprisonment for a term exceeding one year," as Count III alleges here, there is a potential for unfairness in the simultaneous trial of the counts containing no such allegation. The record on appeal reveals no pretrial motion for severance, and a single trial on the three counts occurred. But this particular defendant fell in clover.

At the opening of trial, the district judge provided the jury with an oral summary of the indictment, including the allegation in Count III that defendant is a person who had been convicted earlier of a violation of law. Although the record on appeal does not include the prosecutor's opening statement, it does include a later representation by defense counsel, unchallenged, that the prosecutor had mentioned that defendant was a convicted felon. However, as a result of certain evidentiary rulings, the jury heard and saw no evidence that defendant had indeed been convicted of a crime at some earlier time. It heard only testimony by a certain police detective that he had conducted an investigation in 1975 and had filed a charge against defendant that he had possessed a handgun in an automobile.

At the close of the government's evidence in the present case, the district court granted defendant's motion for a directed verdict on count III. Also, in the very opening passages of its instructions to the jury, the district court stated:

You will put out of your minds any reference to or evidence concerning Count III—possession of a firearm after conviction of a felony, as I have ruled that the Government has failed to produce evidence in support of that charge in that the Government has failed to prove that defendant was previously convicted of a felony. You must decide Counts I and II as if such a charge was not made and that no evidence was submitted in support of that charge. You must limit your consideration to Counts I and II of the indictment and must determine if the Government has sustained its burden of proof beyond a reasonable doubt, excluding all references to or evidence concerning Count III.

■ Defendant moved for a mistrial immediately following the district court's direction of a verdict on count III at the close of the government's case, contending that the earlier references in the jury's presence to an earlier conviction would deprive him of fair consideration of counts I and II. The court implicitly denied the motion by

offering to give the jury instruction quoted above. Ultimately, defendant agreed that the instruction be given, but preserved his contention that it would not be sufficiently corrective. We disagree. The defendant had the benefit of the jury's awareness that the government had failed to offer evidence of an earlier conviction, the court's accentuation of that failure in the instructions, and a further, explicit instruction that the jury must decide counts I and II as if it had never been charged that defendant had been convicted of a felony previously. There was no abuse of the district court's discretion to grant or deny a new trial.

It is ordered that the judgment appealed from is affirmed.