UNITED STATES of America, Appellee,

v.

Vincent CIAMPA, Defendant, Appellant.

No. 85–1729.

United States Court of Appeals,
First Circuit.

Argued April 8, 1986.
Decided June 5, 1986.

Joan Lieberman with whom John Wall and Cullen & Wall, Boston, Mass., were on brief for defendant, appellant.

S. Theodore Merritt, Asst. U.S. Atty., with whom William F. Weld, U.S. Atty., Boston, Mass., was on brief for appellee.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

BOWNES, Circuit Judge.

Defendant-appellant Vincent Ciampa appeals his jury trial conviction of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The issues before us fall into two categories: denial of defendant's motion to suppress and the conduct of the trial. We find no substance to any of defendant's contentions and affirm.

## I. THE SUPPRESSION ISSUE

On April 3, 1985, defendant's apartment was searched under the authority of a warrant issued by a United States Magistrate on March 29, 1985. The warrant deadline was April 7, 1985. The search was carried out by two Special Agents of the Drug Enforcement Administration, Robert Lumsden, and Thomas Doud. The evidence seized was a mason jar containing two bags of cocaine packed in rice, a triple beam balance scale, two bottles of a cut-

ting agent used to increase the volume of cocaine, a sifter, packaging papers, other drug paraphernalia, $850 in cash, and a money market statement showing a balance of $20,640.07 as of January 1, 1985. Also seized but not introduced into evidence were a number of blue and orange pills.

Defendant, a reserve officer for the Saugus Police Department, returned to his apartment during the search. After being advised of his constitutional rights, defendant made some statements which the agents recounted during the trial. He said that about eight months prior he came across a guy and a girl in an automobile and saw a box with the words "Ohaus scale" on it. After questioning the couple, he seized the box, put it in his cruiser and took it home. He opened the box a couple of days later and found the mason jar and drug paraphernalia in it. Defendant said that he subsequently took the stuff out of the box, played with it and placed it in different locations in his bedroom. Defendant told the agents that he was "hanging onto" the material because "he was conducting his own investigation into cocaine trafficking" and "was trying to get Mr. Big." Agent Lumsden, with Agent Doud present, went over the items seized with defendant and asked him if he was going to stick to his story or would, for consideration, assist the DEA in making a case against the supplier. Defendant replied by saying, "No I couldn't do it. All I have is my word and a big set of balls."

Defendant contends that the warrant affidavit did not provide the magistrate substantial grounds for finding probable cause for three reasons: (1) much of the affidavit information was hopelessly stale and unreliable; (2) the information obtained from an informant was unreliable and should have been excluded; and (3) the affidavit contained recklessly false statements which should have been excluded. Defendant also faults the district court for refusing to hold a hearing under the rule of *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

We review the affidavit under the "totality-of-the-circumstances analysis" established in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Under this analysis, "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value" of an informant's report. These factors should not be viewed as "entirely separate and independent requirements." They are to "be understood simply as closely intertwined issues that may usefully illuminate the commonsense practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular case." *Id.* at 230, 103 S.Ct. at 2328 (footnote omitted). The standard of probable cause is the probability, not a *prima facie* showing, of criminal activity. *Id.* at 235, 103 S.Ct. at 2330–2331. Courts should not subject the affidavit to *de novo* review and should give "great deference" to the magistrate's determination of probable cause. *Id.* at 236, 103 S.Ct. at 2331. This circuit has had occasion to apply *Gates* in a number of cases: *United States v. Moscatiello*, 771 F.2d 589, 596 (1st Cir.1985); *United States v. White*, 766 F.2d 22, 25 (1st Cir.1985); *United States v. Butler*, 763 F.2d 11, 14 (1st Cir.1985); *United States v. Baldacchino*, 762 F.2d 170, 175 (1st Cir. 1985); *United States v. Badessa*, 752 F.2d 771, 773 (1st Cir.1985); *United States v. Campbell*, 732 F.2d 1017, 1019 (1st Cir. 1984).

We turn to the affidavit which was prepared by Agent Lumsden. Paragraphs 1 and 2 state that Lumsden has been a Special DEA Agent for fifteen years, that he received extensive training as to the practices, customs, habits, and routine of cocaine dealers, and that he is familiar with the devices and materials used by cocaine dealers.

Paragraphs 3–14 are the core of the affidavit. In them, Lumsden details information given him by a confidential informant —CI-1. In paragraph 3, Lumsden states that the informant has consistently given him truthful and reliable information, that information provided by the informant led

to a prior seizure of cocaine, and that the informant's information has "without exception" been verified by independent sources, including law enforcement officials. The affidavit, dated March 29, 1985, states that "during the last week" the informant gave Lumsden the following information: Ciampa was physically described. His telephone number and residence address were given. The informant personally observed that Ciampa, known to be a Saugus police officer, only occasionally wears a police uniform, that it appears that he is not working, that he always seems to have a large amount of money, that he drives a late model Corvette and wears a significant amount of gold jewelry. Paragraphs 4–6 of affidavit. Paragraphs 7–13 contain information given to the informant by one of Ciampa's former girl friends, Lisa Borum, who was not aware of Lumsden's relationship with the informant. Borum told the informer the following: Ciampa has been selling cocaine to her knowledge for the past nine months. Borum was a frequent visitor at Ciampa's apartment during this period and regularly saw cocaine and scales there. Ciampa frequently goes to Florida to replenish his supply of cocaine, which is all stored in his home. Ciampa himself uses cocaine regularly. One of Ciampa's customers is another reserve officer of the Saugus Police Department, Gary Mansfield. Borum was last in Ciampa's apartment about three weeks ago and at that time saw cocaine there. Ciampa's last Florida trip to obtain cocaine was either the end of the week of March 11, 1985, or the early part of the week of March 18. Borum had an argument with Ciampa on March 22, 1985, and they are no longer friendly.

Paragraph 14 of the affidavit recites that the informant is personally acquainted with Gary Mansfield and knows from "its" dealings with Mansfield that he regularly purchases cocaine from Ciampa.

Paragraphs 15–19 of the affidavit relate information that the affiant Lumsden received from Chief Inspector Howard Long of the Saugus Police Department. Long received information from a reliable informant about a year ago who told him that Ciampa, while working details in clubs in Saugus as a reserve police officer, stopped and searched club patrons, searched them and seized cocaine from them. Ciampa did not arrest the people from whom he seized the cocaine, and sold the cocaine which he had thus obtained. Long told Lumsden that his informant had given consistently reliable information in the past which had led to arrests and seizures of evidence, including narcotics. Based on his personal information and knowledge, Long told Lumsden: that Ciampa is a reserve police officer for the Town of Saugus but rarely works as such; that in the past Ciampa worked paid details at clubs, but recently has refused most offers to work for extra pay; Mansfield is also a Saugus reserve police officer; Ciampa also carries large quantities of cash, drives late model Corvettes, wears a significant amount of gold jewelry; and Ciampa frequently travels to Florida on trips of short duration.

Paragraphs 18–22 of the affidavit establish the phone number for Ciampa's apartment, the street number of his apartment, and his date of birth, January 3, 1954.

Paragraphs 23–25 of the affidavit contain information related to the affiant by Deputy Superintendent Edward Walsh of the Boston Police Department. Walsh told Lumsden that about eleven months ago a reliable informant who has consistently given truthful information to the Boston police told him that Ciampa was obtaining large quantities of cocaine from Arman Barouk, a Boston jeweler. On two occasions thereafter, Walsh himself saw a car registered to Ciampa in the vicinity of Barouk's jewelry store. According to Walsh's informant, Ciampa met with Barouk on both of these occasions to obtain cocaine. Walsh arrested Barouk about three months prior to his conversation with Lumsden and seized a quantity of cocaine.

■ Defendant's argument that "much of the information" contained in the affidavit was "hopelessly stale and unreliable" focuses on the information given to the

affiant by Chief Inspector Long and Deputy Superintendent Walsh. This ignores the detailed facts given to the affiant's informant by defendant's former girl friend, Lisa Borum. We agree with the district court that, even if the Long and Walsh information were deleted from the affidavit, it still established a basis for a finding of probable cause. Following the totality-of-the-circumstances test, we find that the Long and Walsh information corroborates and substantiates the detailed information supplied by Lumsden's informant.

■ Contrary to what defendant urges, we find that the facts in paragraphs 4–14 supplied by informant CI–1 are reliable and sustain a finding of probable cause. There can be no objection to hearsay "if the informant is shown to be reliable and there is a disclosed, reliable basis for his information." *United States v. Asselin*, 775 F.2d 445, 446 (1st Cir.1985). *See also Illinois v. Gates*, 462 U.S. at 241–42, 103 S.Ct. at 2333–34; *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964); *Jones v. United States*, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960). This was not a "bare bones" affidavit with only conclusory statements affording the magistrate no basis for issuing a warrant. *Gates*, 462 U.S. at 239, 103 S.Ct. at 2332. It recited specific facts given a proven reliable informant by a former girl friend of the defendant. Defendant has attacked the character, credibility and reliability of Lisa Borum, but has produced nothing to show that she knew that the information she gave the informant would be relayed to a DEA agent. Prior to the breakup between her and Ciampa on March 22, 1985, Borum was certainly in a position to observe Ciampa's personal activities. The facts she recounted to the informant, the informant's own personal observations, and the personal knowledge and observations of Chief Inspector Long and Deputy Superintendent Walsh, all add up to a totality of circumstances giving the magistrate a substantial basis for finding that probable cause existed. *Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332.

■ Finally, defendant contends that the affidavit contains recklessly false statements. Defendant asserts that Arman Barouk never owned a jewelry store, that his father was involved with one which has been closed since March 1, 1985. He, therefore, argues that the affidavit statement that "Walsh saw a car that was registered to Ciampa in the vicinity of Barouk's jewelery shop" was false. Another basis for claiming that the statement was false was that the only car registered to defendant was driven up from Florida on March 10, 1985. There are, however, no dates given in the affidavit as to when Walsh made the observation. It could have been made anytime between the day on which Walsh spoke to his informant, eleven months prior to March 29, 1985, and the day on which Walsh gave the information to the affiant, March 29. Defendant has cast some doubts on the accuracy of the affidavit statement, but has not shown that it was either false or reckless.

■ Defendant also claims that paragraph 18 of the affidavit was false and reckless: "Long added that Ciampa frequently travels to Florida. These trips are usually short in duration." Defendant claims that his trips were infrequent and of long duration. But Long's information was the same as that given the informant by defendant's girl friend. There is no basis whatever for finding that the statements in paragraph 18 were either false or reckless.

■ The other statements that defendant claims were false were those attributed to Lisa Borum. Specifically, he claims that the statements in paragraph 13 that she and he had an argument on March 22, 1985, and were no longer friendly were false. Defendant asserts that he consoled her and treated her wounds after she put her hand through a window after a fight with another woman on that date. Defendant's memorandum to the district court in support of his motion to suppress and the attached exhibits from which he mainly relies for his false and reckless statements claim indicate pretty clearly that Borum and defend-

ant had a stormy relationship punctuated by quarrels and one lawsuit. We find nothing in any of the memos and exhibits filed by defendant that would sustain a finding that the statements based on the information were false or reckless. The most that can be said is that on two occasions, February 11 and March 22, 1985, Lisa Borum acted as a lover scorned.

It follows from our analysis that defendant has not established the requisites for a *Franks* hearing. He has not made "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, . . . ." *Franks v. Delaware*, 438 U.S. at 155–56, 98 S.Ct. at 2676–77.

The motion to suppress and the motion for a *Franks* evidentiary hearing were properly denied. Since the warrant was valid, we need not decide whether *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) applies.

## II. THE CONDUCT OF THE TRIAL

Defendant's claim of errors as to the conduct of the trial fall into four categories: (1) the district court's conduct towards defense counsel; (2) evidentiary rulings; (3) the district court's failure to instruct the jury or strike certain remarks made by the prosecution in closing argument; and (4) the jury instructions on lesser included offense.

### A. *The Conduct of the Trial Judge*

Defendant contends that he was deprived of a fair trial because the trial judge interrupted defense counsel's opening twice, disparaged his evidence in open court and at the bench, assisted the prosecutor with evidentiary objections and presentation of evidence, and unduly hastened the progress of the trial.

It is true that the judge twice interrupted defense counsel's opening statement, but, we think, justifiably so. The first interruption occurred when counsel started to use a chart to illustrate where defendant was when he allegedly seized the cocaine and drug paraphernalia subsequently found in his apartment. The location of the automobile from which the defendant claims he took the cocaine and related material was of only collateral relevance. Clearly, it was a waste of time for defense counsel to attempt to use a chart to establish the location of the automobile vis-a-vis other places in the vicinity. It was not the location of the automobile that was important, but whether the jury believed defendant's story as to when and how he obtained the incriminating material. Moreover, the chart had not been marked in evidence, nor had defense counsel advised the court beforehand of his intention to use it. The second interruption came after a lengthy bench conference during which the judge, in the face of objection and argument by defense counsel, explained why counsel could not use the chart and asked that he finish his opening in "a most expedious way." Counsel then addressed the jury: "Members of the jury, I have been instructed _ _ _." at which point the judge interrupted him and stated: "Well that is not a fact. You tell the jury what it is that you expect the evidence to show that is relevant to the issues involved in this case. That's the purpose of an opening statement." Defense counsel then completed his opening statement without the use of the diagram. We find nothing untoward in the judge's interruption of counsel's opening. As the governor of the trial, the judge has the responsibility of ensuring its proper conduct and determining questions of law. *Glasser v. United States*, 315 U.S. 60, 82, 62 S.Ct. 457, 470, 86 L.Ed. 680 (1942); *Quercia v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933). There was nothing said or done by the judge that impinged on the defendant's right to a fair trial.

There is no merit at all in defendant's contentions that the judge disparaged the defendant's evidence before the jury and at bench conference and that he assisted the prosecutor with evidentiary objections and presentation of evidence. This

conclusion is based on a careful reading of the transcript. Defendant has attempted to convert adverse rulings on the admissibility of evidence into improper trial conduct. We note that most of the evidence which defendant offered was admitted even though a great deal of it was of dubious relevance.

■ Nor was the entire trial "permeated by an atmosphere of judicial haste directed at defense counsel" as defendant claims. The judge explained patiently why his schedule made it desirable that the case go to the jury on Thursday afternoon. The trial timetable was set, in part at least, on defense counsel's estimate as to how long his presentation of evidence would take. It is also to be noted that the court adjourned early (before 4:00 p.m.) on the third day of trial partially because of defense counsel's request for some time to think about a ruling excluding evidence of defendant's state of mind relative to his relationship with his former girl friend, Lisa Borum. Finally, we note that, although defense counsel had been warned that the case would be submitted to the jury on Thursday afternoon, he asked for a delay until Friday because his requests were not yet prepared.

Our reading of the record reveals an attempt by defense counsel to defend a woefully weak case by confusing the issues through the introduction of and attempts to introduce evidence of dubious and collateral relevance. We do not condemn defense counsel's trial tactics. We realize that he was under strain because of pending trials in other courts. That and the burden of defending a well nigh indefensible case may be an explanation for his trial tactics and refusal to accept the evidentiary rulings of the court without protracted argument. It does not excuse, however, his raising on appeal the claim that the judge's conduct deprived his client of a fair and impartial trial. A careful reading of the record reveals no basis whatever for this assertion.

## B. *The Evidentiary Rulings*

■ Defendant assigns as errors the exclusion of a rent receipt establishing the true value of a ring found in his apartment, rent receipts reflecting the cost of his apartment, and documents relating to his sale of automobiles in Florida. This evidence was offered to show that defendant lived modestly and had legitimate sources of income. The evidence was properly excluded because it was cumulative. There was already evidence in the record that the ring, which was imitation gold, cost $20.00. There was no dispute that the defendant paid $150 a month in rent for the basement apartment. Defendant testified extensively about the sales and purchases of automobiles in Florida by himself and his father. This evidence was also undisputed, as was the fact that a number of automobiles he purchased were registered in the name of his sister. We also note that evidence about defendant's life-style came into the case through statements made by defendant to the DEA agents, the cross-examination of the agents and direct testimony by the defendant. The government never claimed that defendant lived in a high, wide and handsome manner as many drug dealers do. The life-style issue was a straw man created by defense counsel and then knocked down by him.

■ Defendant also claims it was error for the court to exclude testimony by witnesses explaining the innocent nature of the pills seized by the government at the defendant's apartment. The pill evidence issue was another straw man. The government did not introduce the pills into evidence or advert to them in any way during the presentation of its case. Defendant offered a witness to testify as to the nature and recommended use of the pills. This testimony was quite properly excluded on the grounds that the pills had nothing to do with the charges against defendant. The court carefully explained to the jury why the testimony and the pills were not admitted into evidence and instructed it "as a matter of law that the presence of pills in this case has nothing to do with the

charges brought, and you are to draw no inference from the fact that they're even offered." Despite this ruling, defendant was allowed to testify that he obtained diet pills from the witness whose testimony was excluded, that he obtained Dietrix from one of his sisters, and that his brother-in-law gave him Valium pills which he used to help him sleep during the day when he was on the night shift. Clearly, the judge's evidentiary rulings were well within his discretion. *United States v. Kepreos,* 759 F.2d 961, 964 (1st Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 227, 88 L.Ed.2d 227 (1985).

### C. *The Ruling on the Prosecutor's Remarks During Final Argument*

During final argument the prosecutor stated:

Ladies and gentlemen, you know, the only thing about this case that reminded me a little bit about law school, when I went there, is that I learned one Latin thing in law school. And that was about it. It was called res ipsa loquitur. And that means the thing speaks for itself. And I suggest to you—

Defendant objected on the ground that this was a proposition of civil law and it would be improper for the jury to convict on the basis of *res ipsa loquitur.* We agree with the district court that the prosecutor was merely using a figure of speech to make a point. After the objection was overruled, the prosecutor continued: "And I suggest to you that when you evaluate the evidence, you evaluate the story that the defendant has given on the stand, and the stories he gave to the agents, that all of that will speak for itself." Defendant again objected and the objection was overruled.

We perceive no error in the court's ruling and his refusal to instruct the jury immediately on the burden of proof. The jury was instructed at the outset of the trial on the presumption of innocence and that the government had to prove both possession and intent beyond a reasonable doubt. The court's final instruction to the jury, which carefully explained the presumption of innocence and the government's burden of proof, came immediately after the close of the prosecutor's argument. It was not error for the district court not to refer directly to the *res ipsa loquitur* comments in its final instructions.

### D. *The Instruction on Lesser Included Offense*

At the request of defendant, not the government, the court gave a lesser included offense instruction. Defendant now complains because the court did not follow its requested instruction.

In *United States v. Beltran,* 761 F.2d 1, 11 (1st Cir.1985), we reiterated:

The refusal to give a particular instruction is not subject to objection if the charge given adequately covers the theory of defense. *United States v. Morris,* 700 F.2d 427, 433 (1st Cir.1983); *United States v. Skinner,* 667 F.2d 1306, 1310 (9th Cir.1982). The court need not give instructions in the precise form or language requested by the defendant. *Morris, supra,* 700 F.2d at 433; *United States v. Winter,* 663 F.2d 1120, 1146 (1st Cir.1981).

Defendant's objection to the instruction is that it tells the jury to first decide whether the government has proven possession with intent to distribute and if they find that the three elements of this crime have not been proven, to then go on to determine whether the defendant was guilty of the lesser included offense of simple possession. This, defendant contends, is a "logical progression" instruction that is forbidden by *United States v. Spock,* 416 F.2d 165 (1st Cir.1969). *Spock* is completely inapposite. What we condemned in *Spock* was the submission of ten special interrogatories to the jury in addition to the general issue of guilty or not guilty. *Id.* at 180–83. *Spock* in no way touches upon a lesser included offense instruction. We have read the lesser included offense instruction carefully and find that it is correct and follows the generally accepted standard. *See* Federal Judicial

Center, *Pattern Criminal Jury Instructions* No. 48 (1982); Devitt and Blackman, *1 Federal Jury Practice and Instructions* § 18.05 (1977). The charge also adequately covered the theory of defense.

We have considered the other objections raised by defendant either directly or inferentially and also find them meritless.

*Affirmed.*