62 F.3d 1411
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
John A. MEUSE, Defendant-Appellant.
 No. 94-2135
 United States Court of Appeals,
First Circuit.
 Aug. 2, 1995
 
 Annemarie Hassett, Federal Defender Office, for appellant.
 Gary S. Katzmann, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before BOUDIN and LYNCH, Circuit Judges, and SCHWARZER,* Senior District Judge.
 PER CURIAM.
 
 
 1
 Defendant John A. Meuse pleaded guilty to a charge of illegally possessing firearms as a felon (18 U.S.C. Sec. 922(g)(1)). Meuse appeals his conviction on the ground that the search that led to the discovery of the firearms was illegal because the affidavit supporting the search warrant failed to establish the likelihood that the items sought would be found in his residence. The items sought were burglary tools and jewelry stolen from the home of Genevieve DiCarlo ("the DiCarlo burglary"). Following his indictment, Meuse moved to suppress all items recovered during the search of his apartment: the three firearms referred to in the indictment, along with ammunition, a stun gun, and other instrumentalities of an armed robbery and burglary gang. (None of the jewelry from the DiCarlo burglary was recovered at Meuse's apartment.) The district court denied the motion, finding that the officers had proceeded in good faith reliance on a facially valid warrant, and that the information in the affidavit supported the magistrate's decision that there was a fair probability that evidence of a particular crime, including jewelry stolen in the DiCarlo burglary, would be found in Meuse's residence. We affirm the district court.
 
 STANDARD OF REVIEW
 
 2
 This court has jurisdiction under 28 U.S.C. Sec. 1291. In reviewing a district court's determination that the face of an affidavit stated sufficient probable cause to support a search warrant, we review only for clear error.[1] United States v. Garc ua, 983 F.2d 1160, 1167 (1st Cir.1993), citing United States v. Nocella, 849 F.2d 33, 39 (1st Cir.1988); see also United States v. Taylor, 985 F.2d 3, 5 (1st Cir.1993) (reviewing court does not undertake de novo review of sufficiency of search warrant affidavit, but accords great deference to the probable cause determination).
 
 BACKGROUND
 
 3
 The warrant was issued on December 10, 1991, by a clerk-magistrate of the Commonwealth of Massachusetts. The 14- page affidavit, signed by Massachusetts State Trooper Michael Grassia, stated in substance the following:
 
 
 4
 On December 2, 1991, Grassia, a ten-year veteran of the force, attended a meeting of police officers from a five-town area of Massachusetts (Wakefield, Malden, Revere, Melrose, and Saugus). The purpose of the meeting was to plan and coordinate strategy for solving a series of armed robberies and burglaries of homes in that area. Chief among the suspects identified at the meeting was John Meuse. One of the Wakefield officers told Grassia that a Ford van registered to Meuse had been identified by witnesses as a vehicle used in an armed robbery the previous month. Meuse subsequently called the police to report the van stolen; when he was informed that the police wanted to talk to him about an armed robbery, however, he refused to go to the police station to retrieve the van, sending his attorney in his place. The Wakefield officer told Grassia that the only damage to the van was a popped ignition, and that everything else appeared intact. Meuse subsequently re-registered the van with different license plates. Grassia obtained other information about Meuse at the meeting, including information about his past criminal record.
 
 
 5
 Because the crimes of which Meuse and his associates were suspected had been committed on Saturdays, the representatives of the various police departments agreed to conduct a joint surveillance of those suspects on the following Saturday, December 7, 1991. At approximately 6:30 p.m. on December 7th, Grassia and the other officers began surveillance at several locations in Revere and Everett, including Meuse's residence. Earlier that afternoon, the DiCarlo residence in Melrose was burglarized. Taken in the burglary were several hundred pieces of jewelry and a light green pillowcase. Some of the jewelry was in a white cardboard box.
 
 
 6
 That evening, at 8:00 p.m., a Monte Carlo registered to Robert Stevens, another of the suspects in the Wakefield crimes, arrived at Meuse's residence. Three men got out of Stevens' car and walked into Meuse's apartment building, one carrying a light- colored cloth bag, and the other two with valise-type bags. Police observed the three men walking around inside Meuse's apartment.
 
 
 7
 An hour later, at 9:00 p.m., police saw Ronald Ferrara enter Meuse's apartment, empty-handed. Half an hour later, Ferrara came out, carrying a brown shopping bag. Police officers followed Ferrara to the parking lot of a restaurant in a nearby town. Ferrara entered another vehicle, talked to the driver for ten minutes, and got out, still carrying the shopping bag. He then drove to an adjoining parking lot, and pulled alongside Meuse's van and Stevens' Monte Carlo, both of which had been followed by police from Meuse's apartment. The police saw Ferrara hand what looked like money into the passenger side of the Monte Carlo, after which he shook hands with the passenger and walked back to his car, still carrying the shopping bag. Ferrara then entered the restaurant, where he stayed until 1:00 a.m.
 
 
 8
 When Ferrara left the restaurant, he was accompanied by his wife. Shortly thereafter, Ferrara was arrested for operating a motor vehicle with a suspended license. An inventory search of his car revealed a brown shopping bag containing over 100 pieces of jewelry and a white cardboard box, all of which were later identified by Mrs. DiCarlo as the items stolen from her home on December 7th.
 
 
 9
 When Ferrara was questioned at the police station, he said he had been at the restaurant the entire evening, from 7:30 p.m. until 1:00 a.m. He told police he had purchased the jewelry from a friend of a friend inside the restaurant, but could not identify either the friend or the seller of the jewelry. Later that night, Ferrara's wife arrived at the police station to post bail for Ferrara, and told police the jewelry was hers. At the time the police had stopped the Ferrara car, however, Mrs. Ferrara said that the jewelry in the car was not hers and that she knew nothing about the bag.
 
 
 10
 Grassia concluded that it was his belief, based on the facts stated above, along with his training and experience as a police officer, that the perpetrators of the DiCarlo burglary had used the pillowcase to carry off the jewelry; that the "light- colored cloth bag" carried into Meuse's apartment on the evening of December 7th was the green pillowcase that had been removed from the DiCarlo residence during the burglary; that Ferrara was acting as a fence for the stolen property and had obtained the jewelry from Meuse's apartment on the evening of December 7th. Grassia stated further that he believed that further stolen property was being kept at Meuse's apartment.
 
 DISCUSSION
 
 11
 Meuse argues that the affidavit in support of the search warrant failed to establish the requisite probability that evidence of the DiCarlo burglary would be found in his residence. He contends that the affidavit was deficient in that it did not establish a sufficient nexus between the stolen jewelry and his apartment.
 
 
 12
 Probable cause exists where "the facts and circumstances within [a police officer's] knowledge, and of which [the officer] had reasonably trustworthy information ... [are] sufficient in themselves to warrant a [person] of reasonable caution" to believe that a crime has been committed or is being committed and that contraband or other evidence of a crime can be found at the place to be searched. Carroll v. United States, 267 U.S. 132, 162 (1925); United States v. Drake, 673 F.2d 15, 17 (1st Cir.1982). Stated another way, probable cause exists when there is a "fair probability" that contraband or evidence of a crime will be found in a particular place. See Massachusetts v. Upton, 466 U.S. 727, 733 (1984); United States v. Jordan, 999 F.2d 11, 13 (1st Cir.1993). "Probable cause" is something less than the "preponderance" standard of proof. "[T]he words 'reasonable cause' are perhaps closer to what is meant." United States v. Melvin, 596 F.2d 492, 495 (1st Cir.), cert. denied, 444 U.S. 837 (1979).
 
 
 13
 Probable cause may be established in various ways, including hearsay from a reliable source or information from an anonymous tip that can be independently corroborated. See Illinois v. Gates, 462 U.S. 213, 233-34, 241 (1983). Probable cause may also be established by the personal observations of police officers. See McDonald v. United States, 335 U.S. 451, 454-55 (1948); United States v. Lee, 962 F.2d 430, 436-38 (5th Cir.), cert. denied, 113 S. Ct. 1057 (1992). Police may use their training, experience, and expertise to draw inferences of criminal activity from behavior that is not facially criminal. Texas v. Brown, 460 U.S. 730, 742-43 (1983) (plurality opinion).
 
 
 14
 The mandate of the Fourth Amendment was satisfied in this case so long as the "totality of the circumstances" provided the issuing magistrate with a substantial basis for concluding that a search would uncover evidence of wrongdoing. Gates, 462 U.S. at 236; United States v. Ciampa, 793 F.2d 19, 22 (1st Cir.1986). The district court found that that standard was met here.
 
 
 15
 The district court found that the information in the affidavit was obtained primarily from the personal observations of trained and experienced police officers; that there had been a rash of burglaries in which defendant was a prime suspect; that defendant drove a van which was believed to have been used in an armed robbery; that on the day of the DiCarlo burglary, Ferrara was seen entering defendant's apartment empty-handed and leaving with a shopping bag that was later found to contain a substantial portion of the jewelry reported stolen by Mrs. DiCarlo just hours before; and that Ferrara lied about his whereabouts that evening and told an incredible story about the source of the jewelry, further undercut by his wife's conflicting story. In the totality of the circumstances, the court found probable cause to believe that evidence of a crime would be found in defendant's apartment. Meuse argues that the conclusion that a search of his apartment would uncover evidence relating to the DiCarlo burglary relied on the inference that the contents of the brown shopping bag removed from Ferrara at 1:00 a.m. on December 8th had been obtained by Ferrara from Meuse's apartment at 9:30 p.m. on December 7th. He claims that even though Ferrara was seen leaving the apartment with a bag that was later found to contain the stolen DiCarlo jewelry, the fact that Ferrara met with other individuals during the three and a half hours between his departure from Meuse's residence and his apprehension by the police makes it unreasonable to conclude that the bag must have contained the stolen jewelry when Ferrara left Meuse's apartment. This argument ignores the fact that the full array of facts and circumstances presented to the issuing court need only establish probable cause, not a certainty that the material sought will be found in the place to be searched. Gates, 462 U.S. at 231-35; accord, Ciampa, 793 F.2d at 22.
 
 
 16
 Similarly unpersuasive is Meuse's argument that the affidavit does not support the inference that the DiCarlo jewelry entered Meuse's apartment in the cloth bag at 8:00 p.m. He claims that the requisite probable cause is lacking because the officers conducting the surveillance described a man carrying a "light-colored bag" rather than the "green pillowcase" missing from the DiCarlo residence. This minor variation in the terms used to describe the bag does not preclude a finding of probable cause. Search warrants are to be interpreted in a "common-sense rather than a hypothetical or a hypertechnical manner." Garc ua, 983 F.2d at 1167. Bits and pieces of information are not to be judged in isolation. United States v. Badessa, 752 F.2d 771, 773 (1st Cir.1985).
 
 
 17
 Meuse's final argument is that there were insufficient facts to link him personally to the stolen jewelry or to Ferrara's criminal activities. He claims, for example, that the affidavit did not show that Ferrara was a known fence, that he had previously fenced stolen property for Meuse, that he had previously received stolen property from Meuse's apartment, or that he had any record for any offense involving stolen property or relating to the robbery/burglary activity for which Meuse was under surveillance. Meuse also argues that Ferrara's lie about his visit to Meuse's apartment establishes nothing other than that Ferrara wished to hide his association with Meuse, that it sheds no light on whether or not the DiCarlo jewelry came from Meuse's apartment.
 
 
 18
 This argument is also without merit. The affidavit showed that there was a fair probability that evidence of the DiCarlo burglary could be found in Meuse's apartment. In addition to the reasons set forth above, the affidavit stated that Meuse's van had been tied to an armed robbery committed in the previous month. The affidavit also described the activity at Meuse's apartment on the evening of December 7th, during which this same van was parked outside. The van was then seen at the parking lot with Ferrara's car and the Stevens' vehicle. Considering the totality of the circumstances, the connection was sufficiently close to support the magistrate's issuance of the search warrant.
 
 
 19
 In any event, the denial of Meuse's motion to suppress is supported by the "good faith" exception to the exclusionary rule. The Supreme Court has declared that even when information contained in an affidavit makes only a marginal case for a search warrant, the warrant should nevertheless be upheld. "[W]e have expressed a strong preference for warrants and declared that 'in a doubtful or a marginal case a search under a warrant may be sustainable where without one it would fall.' " United States v. Le on, 468 U.S. 897, 914 (1984). "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Id. at 926.
 
 
 20
 Here, the district court found that the officers proceeded in good faith reliance on a facially valid warrant, issued by a judicial officer, and supported by "much more than a 'bare-bones' affidavit." Id. Thus, the "good-faith" exception applies in this case.
 
 
 21
 Affirmed.
 
 
 
 *
 Of the District of Northern California, sitting by designation
 
 
 [1]
 Meuse contends that the "clear error" standard is not applicable here because the district court's determination of the sufficiency of the underlying affidavit was made after a non- evidentiary hearing, citing United States v. Falon, 959 F.2d 1143, 1147 (1st Cir.1992). In Falon, however, the issue was not the sufficiency of the search warrant affidavit, but the particularity of a broadly worded search warrant, which did not specifically incorporate or attach the affidavit, and which did not refer to the criminal offenses for which the evidence was sought. We suggested that de novo review might be appropriate when, as there, the district court makes a purely legal ruling regarding the level of particularity required in a search warrant. We added, however, that when reviewing conclusions in the nature of fact finding, we would apply the clear error standard. Id