**UNITED STATES of America,**
**Plaintiff,**

v.

**Lawrence BENEDICT, a/k/a**
**"LB", Defendant.**

**No. 98–CR–6046L.**

United States District Court,
W.D. New York.

June 12, 2000.

John R. Parrinello, Rochester, NY, for Lawrence Benedict, a/k/a "LB", defendant.

Martin J. Littlefield, Asst. U.S. Atty., U.S. Attorney's Office, Buffalo, NY, for U.S.

## DECISION AND ORDER

LARIMER, Chief Judge.

Defendant, Lawrence Benedict, is charged in three counts of a five-count indictment with violations of 18 U.S.C. §§ 371 and 2252(a)(1), relating to the possession and transportation of child pornography. On December 28, 1999, Magistrate Judge Jonathan W. Feldman issued a Report and Recommendation recommending that defendant's motions to dismiss the indictment and to suppress evidence be denied. Defendant has filed objections to the Report and Recommendation.

## DISCUSSION

**I. Failure to Read Defendant his *Miranda* Rights**

Defendant's first objection is that Magistrate Judge Feldman allegedly erred in finding that Benedict was not in custody at the time that he made certain statements to Postal Inspector Terrance Loftus during the execution of a search warrant at Benedict's residence. The Magistrate Judge found that Benedict had not been read his *Miranda* rights at the time that he made the statements, but that those statements are nevertheless not subject to suppression because Benedict was not in

custody at that time. *See Miranda v. State of Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (warnings must be given prior to questioning of person in custody). The government does not object to the Magistrate Judge's finding that *Miranda* warnings were not given, but contends that whether they were or not is irrelevant because defendant was not in custody.

After conducting a *de novo* review of the record, I concur with the Magistrate Judge's findings in this regard. On the facts before me, I conclude that Benedict was not in custody when he made the statements in question, and that *Miranda* warnings were therefore not required.

Under *Miranda,* statements made by an individual during a custodial interrogation are inadmissible unless they were preceded by a series of warnings concerning the individual's right against self-incrimination and his right to counsel. "Custody" and "interrogation" are the two prerequisites that trigger the need for *Miranda* warnings. *See Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990) ("It is the premise of *Miranda* that the danger of coercion results from the interaction of custody and official interrogation").

 Custody for purposes of *Miranda* involves a situation in which the defendant is "deprived of his freedom of action in any significant way." *Beckwith v. United States,* 425 U.S. 341, 347, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (quoting *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602); *see also Oregon v. Mathiason,* 429 U.S. 492, 494, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam); *United States v. Burke,* 700 F.2d 70, 83–84 (2d Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983). The Supreme Court has stated that "the ultimate inquiry [in determining whether an individual is in custody] is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125,

103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (per curiam) (quoting *Oregon v. Mathiason,* 429 U.S. at 495, 97 S.Ct. 711).

In determining whether a person is in custody, the court must view the totality of the circumstances, and should not " 'indulge in unrealistic second-guessing' as to the means law enforcement officers ... employ to conduct their investigations." *United States v. Glover,* 957 F.2d 1004, 1011 (2d Cir.1992) (quoting *United States v. Hooper,* 935 F.2d 484, 497 (2d Cir.), *cert. denied,* 502 U.S. 1015, 112 S.Ct. 663, 116 L.Ed.2d 754 (1991)). The test is an objective one which "focuses upon the presence or absence of affirmative indications that the defendant was not free to leave." *United States v. Mitchell,* 966 F.2d 92, 98 (2d Cir.1992). The officer's subjective intent "is relevant ... only to the extent that that intent has been conveyed to the person confronted." *Michigan v. Chesternut,* 486 U.S. 567, 575 n. 7, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). *See also United States v. Kirsteins,* 906 F.2d 919, 923 (2d Cir.1990) (inquiry "focuses on whether a reasonable person in the same situation would have believed that he was not free to leave"). In making this assessment, courts have considered a number of factors, including: whether a suspect is or is not told that she is free to leave; the location and atmosphere of the interrogation; the language and tone used by the police; whether the suspect is searched, frisked, or patted down; and the length of the interrogation. *Tankleff v. Senkowski,* 135 F.3d 235, 244 (2d Cir.1998).

In addition, "[d]ecisions in this circuit have emphasized that in the absence of actual arrest, an interrogation is not 'custodial' unless the authorities affirmatively convey the message that the defendant is not free to leave." *Mitchell,* 966 F.2d at 98. *See also Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (defendant not in custody prior to formal arrest since he was never informed that detention would not be temporary, and officer did not communicate to defendant his decision to take him into custody; "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time"); *United States v. Guarno,* 819 F.2d 28, 31–32 (2d Cir.1987); ("in the absence of arrest something must be said or done by the authorities, either in their manner or approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so") (quoting *United States v. Hall,* 421 F.2d 540, 545 (2d Cir.1969), *cert. denied,* 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970)); *United States v. Manbeck,* 744 F.2d 360, 378 (4th Cir.1984) (defendant not in custody since he was not told he was under arrest, and was not handcuffed), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985).

Applying these standards to the case at bar, it is plain that Benedict was not in custody at the time that he made the statements. First, Benedict was in familiar surroundings: his own home. While not dispositive, that fact militates against a finding that defendant was in custody. Although defendant is correct in stating that a person might be upset to find police officers in his home conducting a search, being upset does not translate into being in custody. Clearly one's home is a far less intimidating location in which to speak to law enforcement agents than, for example, a police station. *See, e.g., Mitchell,* 966 F.2d at 99 ("It is similarly clear that [defendant] was not in custody during his interview. The entire interview occurred in the familiar surroundings of [defendant's] home"); *United States v. Gregory,* 891 F.2d 732, 735 (9th Cir.1989) (defendant interviewed in his home was not in custody); *United States v. Rakowski,* 714 F.Supp. 1324, 1334 (D.Vt.1987) ("Lower courts ... almost universally hold that questioning in a suspect's home is not custodial because individuals in a familiar environment are less likely to be intimidated by law enforcement officers") (collect-

ing cases) (cited in *Mitchell,* 966 F.2d at 99).

Defendant's argument that no one told Benedict that he was free to leave is specious. Number one, no one told him that he could *not* leave. Furthermore, there is little reason to think that a person would even *want* to leave his own home while it is being searched by law enforcement officers; most people would want to observe what the officers were doing.

Moreover, the record shows that defendant's movement within his house was not restricted in any significant way. Although defendant points to a number of alleged restraints on his movement, all that they really amount to was an instruction to Benedict not to interfere with the search. Benedict was in fact allowed to move about, and he did so. He went to his bedroom to lie down, and he was allowed to use his telephone. He was never handcuffed or frisked, or told that he was under arrest. In short, under all the circumstances, it cannot be said that, when viewed objectively, any significant restraints were imposed on defendant's freedom so as to transform his conversation with Loftus into a custodial interrogation. *See United States v. Salvo,* 133 F.3d 943, 950–53 (6th Cir.) (defendant questioned at his dormitory computer room about his possession of child pornography was not in custody), *cert. denied,* 523 U.S. 1122, 118 S.Ct. 1805, 140 L.Ed.2d 943 (1998); *United States v. Dornhofer,* 859 F.2d 1195, 1200 (4th Cir.1988) (defendant questioned in his apartment during police search for pornography not "in custody"), *cert. denied,* 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989). There was therefore no need to inform him of his *Miranda* rights, and there is no basis upon which to suppress his statements.

## II. Right to Counsel

Defendant next contends that the Magistrate Judge erred in holding that Benedict's right to counsel was violated. This assertion is meritless. In his written objections, defendant goes on at length about alleged contradictions and inconsistencies in the testimony of the government's witnesses, but he fails to address the legal basis for Magistrate Judge Feldman's conclusions in this regard: first, that defendant's *Fifth* Amendment right to counsel was not implicated because he was not in custody at the time, *see United States v. Thompson,* 35 F.3d 100, 103–04 (2d Cir.1994); and second, that his *Sixth* Amendment right to counsel was not violated because that right did not attach until the government formally brought charges against Benedict. *See Moran v. Burbine,* 475 U.S. 412, 428–32, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *accord United States v. Gordon,* 156 F.3d 376, 379 (2d Cir.1998). For the reasons already stated, I reject defendant's assertion that he was in custody, and therefore no right to counsel existed at the time in question.

## III. Due Process

Defendant next objects to the Magistrate Judge's recommendation that defendant's motion to suppress his statements on the ground that the statements were "the product of coercive behavior on the part of the police" be denied. In effect, defendant contends that any incriminatory statements that he may have made-and hence any waiver of his rights to remain silent and not to incriminate himself-were involuntarily made.

The government is required to prove waiver of a defendant's *Miranda* rights by a preponderance of the evidence. *United States v. Villegas,* 928 F.2d 512, 518–19 (2d Cir.), *cert. denied,* 502 U.S. 843, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991). "To prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal,* 47 F.3d 539, 542 (2d Cir.1995) (per curiam). Only if the totality of the circumstances "reveal[s]

both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). A voluntary relinquishment of a right occurs when the relinquishment is the "product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* at 421, 106 S.Ct. 1135. The test for determining the voluntariness of a confession "is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *Derrick*, 924 F.2d at 817 (quoting *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir.1988)). The Supreme Court has also stated that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

█ Defendant's arguments regarding this issue fare no better than his contention that he was in custody. His allegations that the search team entered his home by prying open the door with a steel bar, which Loftus allegedly carried with him during the search, and that one officer "bumped" defendant, do not show coercive behavior on the part of any members of the search team. Obviously a person whose house is being searched for child pornography is likely to be under some stress during the search (especially if he knows that pornographic materials are in fact present), but here "the record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements" allegedly made by Benedict. *Moran*, 475 U.S. at 421, 106 S.Ct. 1135. To accept defendant's argument would mean that virtually any statements made by a suspect during the execution of a search warrant at his home would be rendered involuntary by the mere presence of law enforcement officers. Defendant's motion is therefore denied.

## IV. Probable Cause/Good–Faith Exception

Defendant next asserts that the Magistrate Judge erred by finding that, even if probable cause for the issuance of the search warrant did not exist, the warrant should be upheld under the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon*, the Supreme Court held that evidence obtained pursuant to a facially valid search warrant, later found to be invalid, was admissible if the executing officers acted in good faith and in objectively reasonable reliance on the warrant.

In his Report and Recommendation, Magistrate Judge Feldman found it unnecessary to decide whether probable cause did exist, because of the applicability of the good-faith exception. He stated that he "ha[d] doubts over whether there was sufficient probable cause set forth in the warrant application ...," but did not decide the issue. Report and Recommendation at 17.

█ While I agree with the Magistrate Judge that the good-faith exception applies here, I have fewer doubts than he over whether probable cause existed. After reviewing all the evidence presented to then-Magistrate Judge Kenneth R. Fisher, who issued the warrant, I believe that there was enough to establish a probability that contraband or evidence of a crime would be found in the place designated.

In his affidavit in support of the warrant application, Inspector Loftus stated that he had been contacted by San Diego Police Detective Bruce Kertson and informed that a search of the San Diego residence of Mikel Bolander (Benedict's codefendant in this case) had yielded "a large volume of child pornography," much of which was contained on computer disks. One of Bolander's computer disks also contained a

mailing list with the names and addresses of five persons, including defendant, who was listed as "Lawrence R. Benedict," with an address in Rushville, New York. The other four persons had addresses in the Netherlands, California, and Illinois.

Detective Kertson also told Loftus that he found correspondence on the disks from someone who identified himself as "LB." That correspondence explicitly referenced child pornography, and made clear that Bolander and "LB" had been engaged in sending pornographic materials to each other. Kertson stated that it appeared that "LB" would enter a letter to Bolander onto a computer disk, and then send it to Bolander by mail. The search turned up two envelopes addressed to Bolander and postmarked in Rochester, New York, each of which contained a floppy disk. One of those disks contained a letter from "LB" and two digitized pornographic photos of young boys, and the other contained three such photographs. Another such letter, signed "L," made clear that "L" had hidden a large volume of child pornography inside the walls of his house.

Thus, Magistrate Judge Fisher was presented with the following information: Bolander was in the habit of storing child pornography onto computer disks, or obtaining disks containing such images. Bolander also apparently was trading such materials with one "LB" or "L." Bolander had received some such disks from someone in the Rochester area. Bolander kept a mailing list on a computer disk, and only one of the persons on that list had the initials LB.[1] That person also lived not far from Rochester; the person next-closest to Rochester lived in Illinois.

Given that information, I believe that a reasonable person would have concluded that defendant more likely than not was "LB," and that he had a large stash of child pornography at his home. Like the pornographic materials themselves, both the correspondence from "LB" and Bolander's mailing list were contained on computer disks. In addition, it certainly appeared highly unlikely that the fact that defendant was the only one of the five people on the list both with the initials LB *and* with an address near Rochester was attributable to sheer coincidence.

A finding of probable cause is based on probabilities, and need not rise to the level of a virtual certainty. *See Illinois v. Gates,* 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). As the Supreme Court has stated, the standard for "probable cause does not demand the certainty we associate with formal trials." *Illinois v. Gates,* 462 U.S. 213, 246, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Information used to support the issuance of a warrant does not have to provide for certainty that the sought objects will be found; rather, the facts and circumstances taken as a whole should provide probable cause to believe that the sought items will be found in the search. *United States v. Brinklow,* 560 F.2d 1003, 1006 (10th Cir.1977), *cert. denied,* 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978).

The Supreme Court has stated that "[t]he task of the issuing magistrate [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). A probable cause determination is concerned with probabilities, not with certainties. *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

Furthermore, the Second Circuit has stated that "[o]n appellate review, a determination of probable cause is accorded 'great deference,' and will be upheld so long as the magistrate or judge 'had a "substantial basis for ... conclud[ing]"

---

1. The other persons' initials were PB, JC, HH, and DV.

that a search would uncover evidence of wrongdoing.'" *United States v. Diaz,* 176 F.3d 52, 110 (2d Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 181, 145 L.Ed.2d 153 (1999). Benedict asserts that no deference is due here because Loftus's affidavit contained misleading information, *i.e.* that "LB" or "L" was in fact Lawrence Benedict, when in fact Loftus had no way of knowing whether that was true. Viewing Loftus's affidavit and the attached exhibits as a whole, however, it is clear that he asserted only that he *believed* "LB" and defendant to be one and the same. A review of the exhibits themselves makes clear that neither the correspondence nor the envelopes from Rochester contained defendant's name, which only appears on the mailing list.

In fact, in his attempt to discredit the warrant and warrant application in every respect, defendant ends up making self-contradictory arguments. On the one hand, he seeks to show that Magistrate Judge Fisher was somehow hoodwinked into believing that probable cause existed by Loftus's allegedly misleading statements, stating that "Magistrate Judge Feldman attributes the error regarding the issuance of the warrant to Magistrate Judge Fisher instead of Loftus the author of the perjurious affidavit." Defendant's Objections at 19. On the other hand, he contends that it should have been "patently obvious" to Magistrate Judge Fisher that probable cause did not exist. *Id.* at 16. The latter statement implicitly recognizes that Loftus did *not* mislead Magistrate Judge Fisher, since all the evidence upon which Loftus based his affidavit was supplied to Magistrate Judge Fisher for his review, including copies of the correspondence, envelopes, and mailing list. Clearly, Magistrate Judge Fisher came to his own conclusion that, based upon that evidence, probable cause for the search did exist.

■ As stated, however, I agree with Magistrate Judge Feldman that regardless of whether probable cause did exist, the warrant may be upheld under the *Leon* good-faith exception. Under *Leon,* evidence seized pursuant to a warrant for which actual probable cause does not exist or which is technically deficient is admissible if the executing officers relied on the warrant in "objective good faith." *Leon,* 468 U.S. at 923, 104 S.Ct. 3405 (test of objective good faith is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization"). The essential rationale underlying the good-faith exception is that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Id.* at 919, 104 S.Ct. 3405.

■ There are four situations in which the good-faith exception is inapplicable, that is, where an executing officer's reliance on a warrant could not be in good faith: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable. *Moore,* 968 F.2d at 222 (citing *Leon,* 468 U.S. at 923, 104 S.Ct. 3405).

■ I find that none of these exceptions applies here, and that a reasonably well trained officer would not have believed that the search was illegal despite Magistrate Judge Fisher's authorization. As stated, I do not believe that Magistrate Judge Fisher was in any way misled; the evidence supporting the application was all before him. It cannot be argued that Magistrate Judge Fisher in any way abandoned his judicial role, and neither the warrant application nor the warrant itself was patently lacking in indicia of probable cause or otherwise facially deficient. As explained above, the evidence tending to link defendant with "LB" and thus child pornography was at least enough to give

rise to a strong suspicion that defendant's home contained child pornography, and in light of that fact, I see no reason why a reasonably well trained officer would have even doubted the validity of the warrant. *See United States v. Jasorka,* 153 F.3d 58, 60–61 (2d Cir.1998) (agents' reliance on judicial determination made by the magistrate judge in authorizing search for child pornography was reasonable, notwithstanding fact that magistrate judge did not personally review pornographic materials, but relied on representations of customs agent).

## V.  *Franks* Hearing

■ Defendant also contends that Magistrate Judge Feldman erred in recommending that defendant's request for a hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), be denied.  I disagree.

By its own terms, *Franks* requires a substantial preliminary showing demonstrating the need for a hearing.  *Franks,* 438 U.S. at 171–72, 98 S.Ct. 2674; *United States v. One Parcel of Property Located at 15 Black Ledge Drive, Marlborougho, CT,* 897 F.2d 97, 100 (2d Cir.1990) ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine") (citation omitted).  Defendant must show that: (1) the warrant affidavit contained false statements made knowingly or intentionally, or with reckless disregard for the truth; and (2) the challenged statements or omissions were necessary to the Magistrate Judge's probable cause determination.  *Franks,* 438 U.S. at 171–72, 98 S.Ct. 2674.

Defendant has failed to offer proof that such a hearing is justified in this case.  As explained above, the record demonstrates that Magistrate Judge Fisher was not misled in any way.  Defendant's assertions to the contrary are entirely conclusory and not supported by the evidence.

## VI.  Speedy Trial

■ Benedict also asserts that Magistrate Judge Feldman erred in recommending denial of defendant's motion to dismiss the indictment based on the alleged denial of his constitutional right to a speedy trial. Benedict rests this assertion on the fact that he was not indicted until August 18, 1998, some forty-two months after the execution of the search warrant, and over sixteen months after an Assistant United States Attorney who was then working on the case allegedly informed defendant's attorney on April 3, 1997, that she expected to indict defendant by April 15, 1997.

This argument is without merit.  As the Magistrate Judge correctly noted, defendant has not presented any evidence that any delays were the result of the government's attempt to gain some tactical advantage or other improper prosecutorial purpose.  *See United States v. Lovasco,* 431 U.S. 783, 796, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977).  Defendant's characterization of the Supreme Court's reasoning in *Lovasco* as "archaic" notwithstanding, Defendant's Objections at 21, this court does not find defendant's own reasoning so persuasive as to justify departing from Supreme Court precedent.  As for defendant's contention that the Supreme Court "seems" to be "leaning in th[e] direction" of holding that the burden is on the government to show the absence of some improper purpose, Defendant's Objections at 21, his reliance on *Doggett v. United States,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), in support of that assertion is misplaced.  First, *Doggett* involved the *Sixth* Amendment right to a speedy trial, which, as Magistrate Judge Feldman pointed out, has no application to pre-indictment delay.  *United States v. Marion,* 404 U.S. 307, 313–20, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Elsbery,* 602 F.2d 1054, 1058 (2d Cir.), *cert. denied,* 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979).  Second, *Doggett* expressly reaffirmed the holding to that effect in *Marion,* the other Supreme Court

case described by defendant as based on "archaic reasoning." *See Doggett,* 505 U.S. at 654–55, 112 S.Ct. 2686. Third, this court is unprepared to disregard binding Supreme Court precedent based on speculation about the direction in which the Court is "leaning."

## VII. Testimony of Government Witnesses

Finally, defendant contends that the Magistrate Judge erred by refusing to "strike" the testimony of Inspector Loftus and two other government witnesses as "unbelievable as a matter of law," or in the alternative to dismiss the indictment based on the witnesses' alleged perjury. Defendant bases this contention on certain alleged contradictions and inconsistencies in the witnesses' testimony.

I agree with the Magistrate Judge that these matters are best left for trial and the jury's determinations of credibility. If indeed the contradictions and inconsistencies are as blatant and serious as defendant contends, then skillful cross-examination of these witnesses may well shatter their credibility in the eyes of the jury. But to "strike" their testimony or dismiss the indictment is a drastic and extraordinary measure that is unwarranted here.

### CONCLUSION

Defendant's objections (Docket Item 51) to the Report and Recommendation issued on December 28, 1999 are denied. The Report and Recommendation is adopted in its entirety, and defendant's motions to suppress and to dismiss the indictment are denied.

IT IS SO ORDERED.