**UNITED STATES of America, Appellee,**

v.

**Sherwood K. JORDAN, Defendant, Appellant.**

No. 92–2332.

United States Court of Appeals, First Circuit.

Heard April 7, 1993.

Decided July 16, 1993.

triple beam scale, $5,880 in cash, six firearms, and nearly 1000 rounds of assault-rifle ammunition. A federal grand jury subsequently indicted Jordan on six counts of possession of firearms or ammunition by a felon, 18 U.S.C. §§ 922(g)(1), 924, and one count of possessing marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), (b)(1)(D).

Jordan moved to suppress all evidence seized during the search, contending that the warrant was issued without probable cause. Although it expressed "grave reservations as to the sufficiency of the probable cause showing," the district court, relying on the "good faith" exception to the exclusionary rule, see *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), denied the motion to suppress. Jordan subsequently entered conditional guilty pleas to three firearms charges and the drug distribution charge, reserving the right to appeal the suppression ruling. See Fed.R.Crim.P. 11(a)(2).

## A. *The Supporting Affidavit.*

The search warrant was issued by a state court judge on the strength of the affidavit of Agent Winston McGill of the Maine Bureau of Intergovernmental Drug Enforcement. The affidavit related in great detail two controlled marijuana "buys," within the preceding ten days, from one Donald Moyse, a convicted drug offender, by a confidential informant acting under the direct control and surveillance of Agent McGill. McGill attested that the confidential informant previously had provided reliable tips and had cooperated with local authorities in other controlled marijuana "buys." The affidavit related that Donald Moyse told the confidential informant that the marijuana involved in both controlled "buys" had come from Jordan's residence, and that both "buys" had been conducted in essentially the same manner: the confidential informant would meet with one Cary LaFrance at a local rest stop area and turn over the agreed purchase price (supplied by Agent McGill). LaFrance would drive to Donald Moyse's residence, and the two would proceed to the Jordan residence

David G. Webbert with whom Berman & Simmons, P.A., Lewiston, ME, was on brief, for appellant.

F. Mark Terison, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., and Richard W. Murphy, Asst. U.S. Atty., Portland, ME, were on brief, for appellee.

Before SELYA, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

On December 3, 1991, Maine law enforcement personnel executed a search warrant at the home of appellant Sherwood Jordan, seizing more than a kilogram of marijuana, a

---

* Of the Federal Circuit, sitting by designation.

where the marijuana was kept. Moyse and LaFrance would then meet with the informant at a local school and deliver the marijuana.

On the occasion of each controlled "buy," McGill searched the confidential informant for contraband immediately prior to providing the purchase money; prior to the second "buy," he searched the informant's vehicle as well. McGill then surveilled the unfolding transaction, observing as the informant delivered the "buy" money to LaFrance, following LaFrance to Moyse's house, and watching LaFrance and Moyse as they proceeded to Jordan's residence, then to the local school. In each instance, McGill's affidavit attests, the informant told McGill that the marijuana had been turned over to him by Moyse and LaFrance at the school and that it had been obtained, according to Moyse, at Jordan's residence. Following the second "buy," the informant told McGill that Moyse had stated that there was a "large quantity" of marijuana at the Jordan residence. Finally, the affidavit represented that urinalysis conducted while Moyse was on probation occasionally revealed positive results for marijuana use.

### B. *The District Court Decision.*

■ Contrary to Jordan's contention on appeal, the district court's "grave reservations as to the sufficiency of the probable cause showing" did not amount to a finding that the warrant was not based on probable cause. "Grave reservations" do not a ruling make. Rather, the district court plainly bypassed any "probable cause" ruling in favor of its functionally distinct reliance on the "good faith" exception to the exclusionary rule. In addition, we agree with the government that the McGill affidavit made a sufficient showing of probable cause.[1]

### C. *Probable Cause.*

■ We must accord the issuing judge's "probable cause" determination "great deference," *United States v. Scalia*, 993 F.2d 984, 986 (1st Cir.1993) (quoting *United States v.*

*Ciampa*, 793 F.2d 19, 22 (1st Cir.1986)), with a common-sense view to whether the "totality of the circumstances" related in the supporting affidavit, *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), gave rise to a fair probability that a search of the target premises would uncover contraband or evidence of a crime. *See United States v. Caggiano*, 899 F.2d 99, 102 (1st Cir.1990) (citing *Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332). The "fair probability" threshold does not require a prima facie showing of criminal activity. *Ciampa*, 793 F.2d at 22 (citing *Gates*, 462 U.S. at 235, 103 S.Ct. at 2330–31).

■ Jordan makes a spirited attack on the McGill affidavit: neither McGill nor the informant had any direct contact with Jordan, nor directly observed any drug buy or transfer at the Jordan residence; Moyse's representations that the marijuana came from Jordan's home are "double hearsay"; Moyse, a marijuana user and convicted drug offender, was not a reliable hearsay declarant and, finally, the affidavit did not demonstrate a "fair probability" that marijuana or related contraband would be found at the Jordan residence since the marijuana Moyse sold to the informant could have come from LaFrance, Moyse, the school, or Jordan's residence.

We agree that nothing in the McGill affidavit excluded the possibility that the marijuana may have come from some place other than the Jordan residence. Nevertheless, viewing the totality of the circumstances related in the affidavit, rather than judging "bits and pieces of information in isolation," *United States v. Cochrane*, 896 F.2d 635, 637 (1st Cir.) (citing *Massachusetts v. Upton*, 466 U.S. 727, 732, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984)), *cert. denied*, 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990), the affidavit was sufficient to support the issuing judge's "common-sense" determination of probable cause.

■ Hearsay statements, like those of Moyse and the informant, often are the stuff

---

1. As there was no evidentiary hearing on the motion to suppress, we examine the only supporting evidence—the McGill affidavit—to determine the sufficiency of the probable cause show-

ing. *Cf. Leon*, 468 U.S. at 925, 104 S.Ct. at 3421–22 (reviewing court may resolve sufficiency of "probable cause" showing before considering "good faith" exception).

of search warrant affidavits. *See, e.g., Scalia,* 993 F.2d at 985–86; *Ciampa,* 793 F.2d at 24. Their reliability may be corroborated by various means, including direct surveillance or circumstantial evidence, or vouchsafed by the affiant—in this case a highly experienced law enforcement officer. *See, e.g., Scalia,* 993 F.2d at 987–88. McGill attested that the confidential informant had provided reliable information and investigative assistance to the police in the past, which may have been sufficient in itself to establish the reliability of the informant's hearsay statements. *See, e.g., Ciampa,* 793 F.2d at 24 (hearsay conveyed by "proven reliable informant"); *cf. United States v. Campbell,* 732 F.2d 1017, 1019 (1st Cir.1984) (double hearsay unacceptable basis for probable cause where *neither* informant *nor* confidential contact had dealt with police in the past). Moreover, McGill also attested that (i) Moyse was an unwitting participant in the controlled "buy," and (ii) unbeknownst to Moyse, McGill observed Moyse's entrance to Jordan's residence on both occasions, thereby establishing that Moyse was in a position to know whether Jordan kept marijuana at his residence. *See Ciampa,* 793 F.2d at 24.

Finally, McGill contemporaneously surveilled all conspicuous steps taken in the course of both controlled "buys," which proceeded exactly as foretold by the confidential informant, and included stops at Jordan's home, the site of the search. Thus, independent corroboration lent further credence to the confidential informant's statements (*i.e.,* the location of the marijuana). *See United States v. Jorge,* 865 F.2d 6, 9 (1st Cir.1989), *cert. denied,* 490 U.S. 1027, 109 S.Ct. 1762, 104 L.Ed.2d 198 (1989); *see also Gates,* 462 U.S. at 244, 103 S.Ct. at 2335 (White, J., concurring) ("Because an informant is right about some things, he is more probably right about other facts....").

Appellant nevertheless correctly observes that these factors in combination do not exclude the possibility that Moyse might have obtained the marijuana at some place along the drug "buy" route other than Jordan's residence. But given the experience and training of the affiant, the confidential informant's proven reliability, and the corroboration of the informant's and Moyse's hearsay reports by means of direct police surveillance, the issuing judge was not required to credit the speculative possibility that the marijuana might have been obtained elsewhere along the drug route than Jordan's residence. Nor may we do so. *See Scalia,* 993 F.2d at 986 (issuing judge's "probable cause" determination entitled to "great deference"). Viewed in their totality, therefore, the circumstances related in the supporting affidavit, together with reasonable inferences therefrom, provided a "substantial basis" for the issuing judge's common-sense determination that there was a fair probability that Jordan's home contained contraband or evidence of a crime. *Caggiano,* 899 F.2d at 102 (citing *Gates,* 462 U.S. at 238–39, 103 S.Ct. at 2332).

*Affirmed.*