UNITED STATES of America

v.

**Trung Chi TRUONG.**

**Cr. No. 95–10348–EFH.**

United States District Court,
D. Massachusetts.

April 11, 1996.

Norman S. Zalkind, Zalkind, Sheketoff, Wilson, Homan, Rodriguez & Lunt, Boston, MA, for Troung Chi Trung.

Susan C. Hanson–Philbrick, United States Attorney's Office, Boston, MA, for U.S.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

A federal Grand Jury indicted the Defendant Trung Chi Truong on December 1, 1995 for violations of 18 U.S.C. § 1959(a)(5), 18 U.S.C. § 1959(a)(1), 18 U.S.C. § 1962(c), (d), and 18 U.S.C. § 2. This superseding indictment alleges that the defendant, and others known and unknown to the Grand Jury, engaged in various criminal racketeering activities involving murder and armed robbery. On February 26, 1996, the defendant moved to suppress the fruits of a January, 1987 search which the Massachusetts State Police conducted at his home.[1] Truong asserts that (1) the affidavit submitted in support of the application for a search warrant contained material false information, (2) there was no probable cause to support the issuance of the search warrant, and (3) the items seized clearly exceeded the scope of the search warrant. The United States Attorney for the District of Massachusetts opposed the motion. After conducting an evidentiary hearing on this matter, the Court grants the defendant's motion to suppress the fruits of the search.

Massachusetts Superior Court Judge Robert Barton issued a search warrant on January 5, 1987 authorizing the search of Truong's home at 1538 Eastern Avenue in Malden, Massachusetts. The warrant identified the items to be seized as "receipts of stay in California around 12/9/86, blood stained clothes, identification of the victim, (and) identifiable jewelry of victim." An affidavit of a Massachusetts State Trooper, Gary R. Walsh, supported the Application for the Search Warrant.

The affidavit made the following representations. Trooper Walsh, then an eight-year state police veteran and a fifth year detective, said that on December 9, 1986, Los Angeles Police (hereinafter "LAPD") found Son Van Vu dead of gunshot wounds in a motel room at 533 Hollywood Boulevard in Los Angeles, California. Detective Claude Harris of LAPD, a 21–year veteran police officer, responded to the scene. Harris concluded that someone had murdered Vu. Harris' investigation also revealed that the Defendant Truong had been in Los Angeles and Oakland, California, on or about the time of the murder. On the date before the discovery of the victim's body, Vu had left his home to meet with Truong. The affidavit stated that investigators had not found anyone who had seen the victim after his scheduled meeting with the defendant.

The affidavit stated that Truong told authorities that he was in Los Angeles around the time of Vu's death with a woman named Chung Chi Chan and others.[2] He admitted

---

1. The items listed as seized during the course of the search were: A diary book with "Oriental" writing; an air mail envelope addressed to Thai Thi Anh Loan; a receipt from Furniture Mart in Alhambra, California; another receipt from the Alhambra Furniture Mart; a receipt from Sears in Alhambra; a receipt from the Regency Travel Service in Alhambra; a Visa receipt from the Foxmoor Store; a booklet of papers with notes, numbers, names and signatures; a piece of paper with a telephone number on it; a note with Vietnamese on both sides; a half page torn with Vietnamese on both sides; a telephone bill from El Monte, California (five pages); an Eastern Airlines Ticket Receipt; a Pacific Bell calling card; an envelope with numbers and names on it; a receipt from Regency Travel in Alhambra; a receipt from Valley TV in Alhambra; a loose leaf address telephone book; a birth certificate from Bon Secours Hospital; another birth certificate from Bon Secours Hospital; a "Miss You" card to a person named Sony in Malden; an envelope to Sony in Malden; a letter to Sony from Amy (two pages); another envelope to Sony in Mal-

den; a letter to Sony from Amy; an envelope to Sony from Carrie; an immigration document in French and English; a Travelers Express Receipt for $300; a hotel room key for room #18 at the Spadina Hotel in Toronto, Ontario; a rental application; an envelope to Jimmy Trwong from Colorado; a letter to Jimmy from Stella; a piece of scrap paper with numbers on it; a note pad with addresses and Chinese writing on the inside cover; five small negatives; ten large negatives; one page from the North Suburban Telephone book; twenty-nine Photographs, 2 of them having notes written on the back; and an envelope containing burnt pieces of a People's Express Airline Ticket that was placed into a Malden Police envelope.

2. In his interview with officers of the Boston Police Department, the defendant said that he went with his wife, child and others to California. Ms. Chan was a friend of his wife who accompanied them on the trip. Truong said that he talked to the victim while in Oakland, Califor-

to meeting with the victim while there but he denied committing the murder or to even having been at the motel where it occurred. The manager of the motel told investigators that Vu did not register for the motel room where his body was discovered. Instead, the manager said that the individual who registered for the room closely resembled Truong.

The affidavit stated that Chan told investigators that she went to Los Angeles with the defendant but she did not remember the exact date of their visit. She did say that, at the beginning of December, she and Truong had left the Malden apartment where they lived to travel to Los Angeles. They stayed in California for about one week and returned. Chan said that hotel receipts and other documents verifying the trip were at their home. The affidavit stated that seizure of the travel documents that Chan described would help law enforcement determine Truong's whereabouts at the time of the murder. Vu's common-law wife informed law enforcement that the victim always carried identification and that he wore identifiable jewelry that had been missing since the time of his death. The affidavit said that investigators believed that Truong could still have those items in his possession at the Malden address. It also stated that blood stained clothing used during the crime could be at the location.

### Probable Cause and the Issuance of the Search Warrant

■ Truong argues, *inter alia*, that there was no probable cause to support the search warrant which Judge Barton issued on January 5, 1987.[3] The United States Attorney, however, maintains that the "totality of the circumstances" standard was met in this case. "Totality of the circumstances" is the standard used to determine whether an affidavit contains sufficient information to show the probable cause necessary for the issuance of a search warrant. *United States v. Jewell*, 60 F.3d 20, 22 (1st Cir.1995); *Illi-*

*nois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Courts should interpret the contents of an affidavit in a common sense rather than in a "hypothetical or hypertechnical manner." *Jewell*, 60 F.3d at 22. In evaluating the sufficiency of the affidavit, a court should give "great deference to the judicial officer who concluded prior to issuing the warrant that a sufficient showing of probable cause had been made." *United States v. Spinosa*, 982 F.2d 620, 626 (1st Cir.1992); *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. "Probable cause means simply that the totality of the circumstances gives rise to a 'fair probability' that a search of the target premises will uncover *evidence of a crime.*" (Emphasis supplied). *Jewell*, 60 F.3d at 23; *United States v. Jordan*, 999 F.2d 11, 13 (1st Cir.1993) (citations omitted). The United States Court of Appeals for the First Circuit has stated:

> The cause necessary to make a thing "probable" is determined under an objective standard. Therefore, an affidavit is sufficient when it "demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it."

*United States v. Nocella*, 849 F.2d 33, 39 (1st Cir.1988) (citations omitted).

■ A common sense analysis results in the conclusion that the affidavit did not provide any information that would suggest that a search of the defendant's home would turn up evidence of Vu's murder. The search warrant indicated that the objects of the search were receipts of the defendant's California trip, blood stained clothes, identification of the victim, and Vu's jewelry. The statements in the supporting affidavit make it probable only that the travel documents would be at the Malden address. On the other hand, the three crucial representations in the affidavit, namely, (1) a meeting between Vu and Truong on the day before the

---

nia, at the Oaks Club. Vu asked the defendant to go to Los Angeles with him. Truong did not say that he met or saw the victim while he was in Southern California. This information was not contained in Trooper Walsh's affidavit.

3. The Court bypasses the issue of whether the affidavit contained allegedly material false statement and proceeds immediately to the issue of whether there was probable cause to support the search warrant.

discovery of Vu's body; (2) the police's inability to find anyone who saw the victim after the scheduled meeting; and (3) the motel manager's description of the person who registered for the motel room, are uncorroborated and the affidavit fails to identify the sources of these statements. For example, the affidavit does not reveal the source of the statement that Vu was going to meet with Truong. The credibility of the informant who provided this information to the police cannot be evaluated. Issues of an informant's veracity, reliability and basis of knowledge are highly relevant in such a matter. *Gates,* 462 U.S. at 230, 103 S.Ct. at 2328. Such issues are closely intertwined and they illuminate the common sense, practical question of whether the police had the probable cause to believe that they would find evidence of a crime in a particular place. *Id.* Moreover, there is no way of determining if this information was based upon personal information rather than on hearsay because the source is unknown. *See, e.g., United States v. Cochrane,* 896 F.2d 635, 641 (1st Cir.1990), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990). Under these circumstances, it is impossible to analyze the credibility of the unknown and unnamed informants.

There also is no indication that police corroborated this information.[4] Supreme Court decisions applying the "totality of the circumstances" analysis have "consistently recognized the value of corroboration of details of an informant's tip by independent police work." *Gates,* 462 U.S. at 241, 103 S.Ct. at 2333. Trooper Walsh's affidavit makes no mention of any police work or investigation that independently corroborates that the victim left to meet with Truong.

The representation that nobody saw the victim after the alleged meeting in the Hollywood motel room also has similar problems. It fails to identify the sources of this conclusion as well as any statement as to what police investigation was conducted to corroborate it.

The affidavit contains no explanation of how the motel manager came to the conclusion that someone who closely resembled the defendant registered for the room where Vu was found dead. This also raises questions about what does "closely resemble" mean and about the interrogation process which led to this conclusion. Furthermore, the affidavit does not address issues of the manager's credibility nor the basis of his knowledge. Details which could provide answers to these queries do not appear in the affidavit.

Trooper Walsh's affidavit, therefore, does not provide information describing any informant reliability or corroborating police work which would show that Truong's home would contain blood stained clothes, Vu's identification or the victim's jewelry. The only material which the police could reasonably have inferred would be in the home was the travel documents based on Chan's statements and the police investigation that corroborated the California trip. This information, however, would not have been evidence of a crime but only an indication of Truong's whereabouts at the time of Vu's death. Standing alone, it would not have established a fair probability that the police would find evidence of Vu's murder at the defendant's apartment.

Although this Court certainly treats Judge Barton's decision with great deference, it must conclude that the totality of the circumstances does not show that there was probable cause. The United States Supreme Court has said:

> Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others. Even if the warrant application was supported by more than a "bare bones" affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totali-

---

4. Truong's admission that he met with Vu while in Los Angeles is not specific as to the time and location of such meeting nor does it bear any relation to the date of discovering Vu's body at the motel. In fact, Truong denies in the affidavit of ever being at the motel or committing the murder.

ty of the circumstances, or because the form of the warrant was improper in some respect.

*United States v. Leon,* 468 U.S. 897, 915, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677 (1984) (citations omitted). This Court must conclude that the warrant was invalid because a common sense analysis would find that the supporting affidavit did not contain information sufficient to establish the fair probability that evidence of Vu's murder would be found at the defendant's home. The affidavit's most crucial statements are not supported by any corroborating evidence nor is there any identity as to the sources of the police information.

### The Good Faith Exception

The United States Attorney argues that the officers who executed the search warrant had an objectively good faith basis to believe in the validity of the warrant. As a result, the government argues that even if this Court were to determine that the affidavit contains insufficient probable cause, there would be no grounds to suppress the search. Truong, however, maintains that "the shortcomings of the evidence supporting the warrant was such that the officers involved did not have a reasonable ground for believing that the warrant was properly issued."

█ "In *Leon,* the Supreme Court held that evidence seized by police officers acting in objectively reasonable good faith reliance on a search warrant issued by a neutral and detached magistrate, but ultimately found to be unsupported by probable cause, need not be suppressed." *United States v. Bonner,* 808 F.2d 864, 867 (1st Cir.1986), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1632, 95 L.Ed.2d 205 (1987). "[T]he officers' reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable and it is clear that in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued." *Leon,* 468 U.S. at 922–23, 104 S.Ct. at 3420–21 (citations omitted). The good faith inquiry is "confined to the objectively ascer-

tainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 923 n. 23, 104 S.Ct. at 3420 n. 23. Suppression is proper if "the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Ricciardelli,* 998 F.2d 8, 15 (1st Cir.1993).

█ At the time of the issuance of the search warrant, Trooper Walsh was an eight-year state police officer and a fifth year detective. He was a well-trained police officer who had advanced to the rank of detective. This Court's analysis of the affidavit found that the absence of probable cause was not a close call. The affidavit supporting the application for a search warrant was not sufficient to show that Truong's home would contain evidence of Vu's murder. A police officer of Trooper Walsh's experience would have known that the affidavit lacked the identity of the informants and independent police corroboration of crucial informant statements. As a result, it was not objectively reasonable for a law enforcement officer in Walsh's position to have believed that there was probable cause to search Truong's home for evidence of the crime of Vu's murder. Trooper Walsh, therefore, could not have executed the warrant in good faith.[5]

For the above-mentioned reasons, the defendant's motion to suppress evidence is granted.

SO ORDERED.

---

5. Because of the lack of probable cause and a good faith exception, the Court does not address the issue of whether the items seized exceeded the scope of the search warrant.