UNITED STATES of America,

v.

Terrance SYKES, Defendant.

No. 05–CR–6057T.

United States District Court,
W.D. New York.

March 20, 2006.

Melanie Babb, U.S. Attorney's Office, Rochester, NY, for United States of America.

## DECISION and ORDER

TELESCA, District Judge.

### INTRODUCTION

Defendant Terrance Sykes ("Sykes") is charged in a three-count Indictment with possession with intent to distribute 50 grams or more of cocaine base, possession of 5 grams or more of cocaine base, and possession of a firearm in furtherance of a drug crime, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A); 844(a), and 18 U.S.C. § 924(c)(1).

On July 4, 2005, the defendant filed an omnibus motion seeking, *inter alia*, suppression of physical evidence obtained during the execution of a search warrant at 263 Emerson Street in the City of Rochester, New York. Sykes contends that there was no probable cause for the issuance of the search warrant, and that because the application for the warrant was so lacking in any indicia of probable cause, no police officer could have reasonably believed that the search warrant was valid.

By Order dated October 4, 2005, this case was referred to Magistrate Judge Marian W. Payson for pretrial proceedings. Pursuant to that Order, on October 27, 2005, Judge Payson issued a Report and Recommendation recommending that defendant's motion to suppress be denied. Specifically, Judge Payson determined that regardless of whether or not there was probable cause to issue the search warrant, the officers conducting the search reasonably relied on the validity of the warrant in executing the warrant, and therefore, pursuant to precedent set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), defendant's motion to suppress should be denied.

The defendant, in three separate filings, has objected to Judge Payson's Report and Recommendations on grounds that there was no probable cause to search the premises at 263 Emerson Street, and that because the application in support of the search warrant was so devoid of any information that could establish probable cause to search the premises, the officers executing the search warrant could not have reasonably believed the warrant to be valid. On November 15, 2005, plaintiff, acting *pro se*, filed objections to the Report and Recommendation. (Docket item no. 45) Two days later, the defendant filed additional objections. (Docket item no. 44) On February 14, 2006, defendant's attorney filed a third set of objections to the Magistrate's Report and Recommendation.[1] (Docket item no. 65). For the rea-

---

1. Although Attorney Felix Lapine represented the defendant at the time he filed the objec-

sons set forth below, I affirm and adopt Judge Payson's Report and Recommendation in its entirety, and deny defendant's motions to suppress.

## STANDARD OF REVIEW

■ Pursuant to 28 U.S.C. § 636(b)(1), after the filing of a Report and Recommendation, any party may serve and file written objections to such proposed findings and recommendations. After such filing,

> [a] judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

28 U.S.C. § 636(b)(1). A district court, however, may not reject the credibility findings of a Magistrate Judge without conducting an evidentiary hearing in which the district court has the opportunity to observe and evaluate witness credibility in the first instance. *Cullen v. United States*, 194 F.3d 401 (2nd Cir.1999). I apply these standards to the following analysis.

## BACKGROUND

The facts of this case were set forth in Judge Payson's Report and Recommendation, and familiarity with those facts is presumed. In summary, the search of 263 Emerson Street was conducted pursuant to a search warrant issued by Monroe County Court Judge Frank Geraci. The warrant was issued upon the application of City of Rochester Police Officer Scott Hill ("Hill"). Hill stated in his application that he had been investigating apparent drug activity at 263 Emerson St., and that as part of his investigation, he arranged to have a confidential informant make controlled buys of cocaine at that location. Hill stated in his warrant application that the confidential informant had provided the Rochester Police Department with reliable information in the past, and that the information provided had led to numerous arrests and convictions.

According to Hill's affidavit in support of his application for a search warrant, Hill gave the informant $1,000.00 to purchase 31 grams of cocaine from 263 Emerson St. Prior to making the purchase, the informant drove to an unspecified location and picked up another person. The two then drove to 263 Emerson Street, where the unidentified person left the vehicle, and entered through the eastern-most door of 263 Emerson St., the location of the suspected drug dealing. After a few minutes, the unidentified person emerged from the house, got back into the car with the confidential informant, and they drove back to the location where the informant had picked him up. The informant dropped the unidentified person off, and returned to the meet-up location with Officer Hill, where the informant produced 31 grams of cocaine. According to the informant, his acquaintance had purchased the drugs from 263 Emerson St.

A second buy was conducted in much the same way. Officer Hill gave the same informant $1,000.00 to purchase another 31 grams of cocaine from 263 Emerson St., but the informant, prior to purchasing the drugs, picked up a different unidentified

---

tions to the Report and Recommendation, Attorney Lapine's motion to withdraw as counsel was granted on March 8, 2006. Prior to being represented by Attorney Lapine, defendant was represented by attorney Donald

Thompson from May 20, 2005 to October 12, 2005, and by Attorney Robert Smith of the Federal Public Defender's Office from April 18, 2005 to May 20, 2005.

person. The two then went to 263 Emerson Street, where this second unidentified individual went into the home, re-emerged after a short period of time, and returned with the informant to the location where he had been picked up. The informant dropped off the unidentified person, and then returned to meet with Officer Hill, where he produced the 31 grams of cocaine which he stated was purchased by the second unidentified person at 263 Emerson St.

Based on the information set forth above, which was contained in Officer Hill's warrant application, Judge Geraci issued a search warrant for 263 Emerson St. Upon execution of the warrant, the police discovered quantities of cocaine and cocaine paraphernalia, as well as a firearm.

Sykes was charged in Monroe County Court with drug possession and possession of drug paraphernalia. Sykes moved to suppress evidence obtained during the search of his home on grounds that the search warrant signed by Judge Geraci was unlawful. By Decision and Order dated April 7, 2005, Acting Monroe County Court Judge John Schwartz granted defendant's motion on grounds that the warrant authorizing the search was not supported by probable cause. Thereafter, a federal grand jury issued the present indictment against Sykes and his case was assigned to this court.

As he did in State Court, Sykes now moves to suppress evidence obtained during the search of 263 Emerson St. on grounds that the search warrant was invalid. Specifically, he contends that the affidavit in support of the warrant submitted by Officer Hill does not set forth facts from which it could be found that probable cause existed to believe that evidence of illegal drug activity would be found at 263 Emerson St. He contends that because the confidential informant did not actually make the alleged purchases, and did not witness the alleged purchases, the confidential informant had no direct knowledge that drug sales were taking place at 263 Emerson St., and therefore there was no basis to issue a search warrant for that location.

## DISCUSSION

As stated above, I adopt Judge Payson's Report and Recommendation in its entirety, and for the reasons stated therein, deny defendant's motion to suppress. In her thorough and comprehensive Report and Recommendation, Judge Payson clearly explained why, under federal law, the evidence obtained pursuant to Judge Geraci's search warrant should not be suppressed here in federal court, despite the fact that the evidence was suppressed in Sykes' previous State Court proceeding. Judge Payson held that under the "good faith" exception to the exclusionary rule set forth in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), (a case that applies to federal proceedings but not to proceedings in New York State), in cases where it is not clear that the search warrant at issue was supported by probable cause, evidence obtained pursuant to the search warrant may not be suppressed if the warrant was issued by a "neutral" judicial officer and the officers executing the search relied in good faith on the validity of the warrant. *See* Report and Recommendation at pp. 16–17. Judge Payson further explained that in this case, because the question of whether or not there was probable cause to issue the warrant was so close, it was appropriate to consider whether or not the *Leon* good faith exception should apply.

Judge Payson correctly concluded that this case should be considered under the *Leon* standard, and in doing so, she also properly applied that legal standard to the

facts of this case. In examining whether or not the conditions for applying the good faith exception had been met, Judge Payson found that Judge Geraci was acting as a "neutral" judicial officer when he issued the search warrant because he was not acting out of any bias, prejudice, or other impermissible animus. Report and Recommendation at p. 17–18. Judge Payson further held that and that under the legal test for determining whether or not an officer executing a search warrant acted in good faith in relying on the warrant, the evidence demonstrated that the officers conducting the search of 263 Emerson St. did rely in good faith on the validity of the warrant. Report and Recommendation at p. 17. I find Judge Payson's findings and conclusions to be correct and therefore hold that because the officers relied in good faith on the warrant issued by Judge Geraci, the evidence obtained during the execution of the warrant is admissible, and defendant's motion to suppress must be denied.

## CONCLUSION

For the reasons stated above, I hereby adopt Judge Payson's October 27, 2005 Report and Recommendation in its entirety, and deny defendant's motion to suppress, to dismiss, and for a hearing.

ALL OF THE ABOVE IS SO OR-DERED.

## REPORT & RECOMMENDATION

TELESCA, United States Magistrate Judge.

### PRELIMINARY STATEMENT

By Order of Hon. Michael A. Telesca, United States District Judge, dated October 4, 2005, all pretrial matters in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 34).

Defendant Terrance Sykes (hereinafter "Sykes") is charged in a three-count indictment. The first count charges Sykes with possessing with intent to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The second count charges Sykes with possessing in excess of five grams of cocaine base, in violation of 21 U.S.C. § 844(a). The final count charges Sykes with possessing a firearm in furtherance of the drug trafficking crimes charged in the previous counts, in violation of 18 U.S.C. § 924(c)(1). All offenses are alleged to have occurred on or about October 28, 2004. (Docket # 1).

Before Sykes was indicted on the pending federal charges, he was prosecuted in Monroe County Court for state crimes arising from the same facts that underlie this federal prosecution. On October 28, 2004, law enforcement officers executed a warrant to search the downstairs apartment of 263 Emerson Street in the City of Rochester. Following the search, charges were presented to a New York State grand jury, and Sykes was indicted on narcotics charges in violation of New York State Penal Law, namely, one count of criminal possession of a controlled substance in the first degree (N.Y. Penal Law § 221.21[1]), one count of criminal possession of a controlled substance in the third degree (N.Y. Penal Law § 221.16[1]) and three counts of criminal use of drug paraphernalia in the second degree (N.Y. Penal Law § 220.50[1]). Sykes thereafter challenged the lawfulness of the warrant, and, by Decision and Order dated April 7, 2005, Acting Monroe County Court Judge John R. Schwartz determined that the warrant lacked probable cause and suppressed the evidence seized pursuant to the search. The State did not appeal that ruling.

One week after that decision, on April 14, 2005, Sykes was indicted on the pending federal charges, which are based upon the same acts from which the state charges arose. As he did successfully in State Court, Sykes has moved to suppress the evidence seized from his residence pursuant to the search warrant. For essentially the same reasons he asserted in state court, Sykes argues that the search warrant for 263 Emerson Street was unsupported by probable cause.

 Sykes recognizes that to justify suppression in federal court, however, his argument must go farther than it did in state court. Specifically, he must show that the warrant lacks probable cause under a less demanding standard, the "totality of the circumstances" standard of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), than the standard that applied in state court. *See People v. Griminger*, 71 N.Y.2d 635, 639, 529 N.Y.S.2d 55, 524 N.E.2d 409 (1988) ("as a matter of [New York] State constitutional law," the *Aguilar–Spinelli* test, rather than the *Gates* test, is the standard to be applied in evaluating probable cause for a search warrant). Moreover, even if such a showing can be made, suppression in a federal case is still not warranted if the government can demonstrate that the officers were entitled to rely reasonably on the warrant's apparent validity. *See United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Consider-

ation of this second issue—the applicability of *Leon* to this case—was absent from the state's court suppression analysis because New York State does not recognize the *Leon* exception. *See People v. Bigelow*, 66 N.Y.2d 417, 497 N.Y.S.2d 630, 637, 488 N.E.2d 451 (1985). For the reasons set forth below, it is precisely the availability of this exception that leads to a different result in this federal case.

In addition to Sykes's probable cause challenge to the warrant, he also has filed numerous other motions.[1] At oral argument on those motions, the Court decided certain of the motions, reserved judgment on others and scheduled an evidentiary hearing on Sykes's motion to suppress statements.[2] On the date scheduled for the hearing, September 1, 2005, Sykes advised the Court through counsel that he was considering seeking permission to retain another attorney, a decision that would necessitate the rescheduling of the hearing. Upon questioning by this Court, government counsel candidly acknowledged that if Sykes's probable cause challenge to the search warrant resulted in suppression, as it did in state court, the government would lack sufficient evidence to prosecute Sykes. In view of that concession, with the consent of the parties, this Court agreed to issue a report and recommendation initially relating only to the issue of probable cause for the warrant.[3] The following constitutes the rec-

---

1. Sykes's omnibus motion also sought, *inter alia*, dismissal of the indictment under the double jeopardy clause of the Fifth Amendment, suppression of statements, suppression of identification procedures, discovery and inspection, rulings on evidentiary matters under rules 404, 608 and 609 of the Federal Rules of Evidence, and disclosure of expert witnesses, *Brady* material and *Jencks* material. (Docket # 18).

2. This Court reserved judgment on Sykes's motions to dismiss the indictment and to sup-

press statements. Each of the remaining requests was either resolved by the parties or decided in open court by the undersigned on August 4, 2005. (Docket ## 24, 25).

3. After the hearing was adjourned, counsel for Sykes moved to be relieved. (Docket # 31). On October 12, 2005, this Court granted that application and appointed new counsel for Sykes. On October 17, 2005, in anticipation of this decision recommending denial of Sykes's suppression motion, this Court issued an Order rescheduling for Octo-

ommendation of this Court on that issue only.

## FACTUAL BACKGROUND

On October 20, 2004, Rochester Police Officer Scott Hill presented a search warrant application to a Monroe County Court Judge for the downstairs apartment at 263 Emerson Street in the City of Rochester. (Docket # 18, "Hill Aff."). In his application, Hill affirmed that 263 Emerson Street was a two-story, multiple-family dwelling and that the eastern-most door on the north side of the building "leads directly into the [downstairs] apartment." (Hill Aff. at 1). Hill further affirmed that there was reasonable cause to believe cocaine and cocaine-related paraphernalia would be located in the apartment, as well as "items or articles of personal property tending to show identity of person in ownership, dominion or control of said premises." (Hill Aff. at 1–2).

In his supporting affidavit, Hill affirmed that on September 28, 2004, he and Rochester Police Officers Sindoni and Alvarado met with a confidential informant for the purpose of "initiating a controlled purchase of cocaine from # 263 Emerson Street." (Hill Aff. at 2). According to Hill, "[t]he confidential informant is known personally to me and to other officers of the Rochester Police Department and the confidential informant has given reliable information in the past that has le[d] to the arrest and conviction of numerous persons for drug related offenses." (Hill Aff. at 3, 4). The officers searched the informant to ensure that he did not possess any contraband and provided him with one thousand dollars in cash. Thereafter, the officers

observed the informant travel to an address on the westside of the City of Rochester (the address was not disclosed). There, the informant picked up another individual, identified only as an "unwitting person" in the affidavit,[4] and they traveled to the area of 263 Emerson Street. The officers then observed the unidentified person, who shall be referred to as "UP–1," exit the informant's vehicle and walk towards the eastern door of 263 Emerson Street, knock on the door and enter. After "a few minutes," UP–1 emerged from the same door and returned to the informant's vehicle. Together, UP–1 and the informant drove away from the area. (Hill Aff. at 2–3).

Hill met with the informant after UP–1 had left the informant's vehicle. During the meeting, the informant provided Hill with fifty dollars in cash and a clear, knotted plastic bag containing a substance later determined to be cocaine. The informant further reported to Hill that he had told UP–1 that he wanted a "31," referring to thirty-one grams of cocaine. UP–1 responded that they could go to "June" and directed the informant to 263 Emerson Street. The affidavit does not identify "June"; nor does it disclose whether and, if so, why the informant believed that UP–1 would attempt to purchase cocaine from the very location that was the object of the officers' investigation.

Hill's affidavit further states that the informant advised Hill that he had provided one thousand dollars to UP–1 and watched UP–1 walk to the eastern door of 263 Emerson Street, knock and enter. According to the informant, UP–1 returned to the car after a few minutes and

---

ber 31, 2005 the evidentiary hearing on Sykes's challenge to the voluntariness of statements he allegedly made to law enforcement.

4. For ease of reading, this Court will use the male pronoun to refer both to the informant and the "unwitting person," although the affidavit does not identify the gender of either individual.

provided him with the plastic bag containing the cocaine. At that point, according to the informant's narrative, he drove UP–1 to another location, where UP–1 exited the informant's car. (Hill Aff. at 2–3). The affidavit does not state whether UP–1 told the informant what transpired inside the apartment, such as who sold him drugs, who was present during the sale and whether the seller obtained the drugs from inside the apartment.

Approximately two weeks later, on October 13, 2004, Hill, along with another police officer, met with the same informant for the purpose of initiating another controlled purchase of cocaine from 263 Emerson Street. The informant was again searched for contraband and provided with one thousand dollars in cash. The officers observed the informant travel to a different, again undisclosed, address on the westside of the City of Rochester where he met with another individual identified only as "a different unwitting person" (hereinafter referred to as "UP–2"). The officers observed the informant and UP–2 travel to 263 Emerson Street, where UP–2 exited the vehicle, approached the eastern door of the building, knocked and entered the location. After a few minutes, the officers saw UP–2 exit the residence and return to the informant's vehicle. Again, the informant drove UP–2 to another location before meeting with Hill. (Hill Aff. at 3).

When he met with Hill, the informant provided him with twenty dollars in cash and a clear knotted, plastic bag containing a substance later determined to be cocaine. The informant reported that he had met with UP–2 and told him that he wanted a "31." The informant then asked UP–2 to go to "June," and UP–2 responded, "Yes." As with the previous transaction, the affidavit failed either to identify "June" or to describe the informant's basis for believing that UP–2 would know who "June" was.

According to the affidavit, the informant further advised Hill that after driving to the area of 263 Emerson Street, he provided UP–2 with one thousand dollars and watched UP–2 approach the eastern door and enter through the door. After a few minutes, UP–2 returned to the informant's car and turned over a clear plastic, knotted bag containing cocaine. (Hill Aff. at 3–4). As with the description of the previous transaction, Hill's affidavit does not recite any information from UP–2 about the events that transpired inside the apartment.

## REPORT AND RECOMMENDATION

PAYSON, United States Magistrate Judge.

Sykes moves to suppress evidence seized from his apartment at 263 Emerson Street on the grounds that the search warrant was unsupported by probable cause. Specifically, Sykes asserts that the affidavit submitted by Officer Hill in support of the warrant was deficient because it was based upon information provided by unidentified third-parties whose reliability and credibility had not been established. (Docket # 18).

### A. *Applicable Legal Standard*

Prior to 1983, both federal and New York State courts evaluated the issue of probable cause to support a search warrant that was based upon information from an informant under the same standard of review, namely, the standard articulated by the Supreme Court in its decisions in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The *Aguilar–Spinelli* test, as it is commonly known, required that an application for a warrant satisfy two requirements; first, that it describe the basis of the informant's knowledge; and, second that it establish either the credibility of the informant or the ve-

racity of his information. *Spinelli v. United States,* 393 U.S. at 416–17, 89 S.Ct. 584. To demonstrate probable cause, each of the requirements had to be independently satisfied, and a deficiency under one prong could not be overcome by a strong showing of the other. *See People v. DiFalco,* 80 N.Y.2d 693, 697, 594 N.Y.S.2d 679, 610 N.E.2d 352 (1993); *see also Lopez v. Greiner,* 323 F.Supp.2d 456, 474 (S.D.N.Y. 2004).

■■■ Over a decade later, in *Illinois v. Gates,* the Supreme Court repudiated the *Aguilar–Spinelli* standard, replacing it instead with the "totality of the circumstances test." 462 U.S. at 232, 103 S.Ct. 2317. As the Court reasoned in *Gates,* "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232, 103 S.Ct. 2317. While the Court acknowledged that the two prongs of the *Aguilar–Spinelli* standard remain "highly relevant" to a probable cause determination, the Court also made clear that they should no longer be viewed as rigid, independent requirements. *Id.* at 230, 103 S.Ct. 2317. To the contrary, the issuing magistrate should "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238, 103 S.Ct. 2317. A reviewing court's obligation is to determine whether the issuing judge had a " 'substantial basis for ... conclud[ing]' that probable cause existed." *United States v. Smith,* 9 F.3d 1007, 1012 (2d Cir.1993) (quoting *Gates,* 462 U.S. at 238–39, 103 S.Ct. 2317) (internal quotation omitted).

■■■ Because Sykes's challenge to the warrant in this Court is based upon the Fourth Amendment to the federal Constitution, it must be determined under the *Gates* "totality of the circumstances" test, rather than the *Aguilar–Spinelli* standard that applied to his state court challenge. *See People v. Griminger,* 71 N.Y.2d at 639, 529 N.Y.S.2d 55, 524 N.E.2d 409. As stated above, even if his challenge succeeds under the "totality of the circumstances" test, another distinction between federal and state law may still operate to preserve the evidence from suppression. Here, unlike in state court, the government may demonstrate that even though the warrant lacked probable cause, such deficiency was not so apparent or substantial as to render the agents' reliance upon the warrant unreasonable. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**B.** ***Application of the Totality of the Circumstances Test to the Instant Search Warrant***

■■■ The question presented by Sykes's instant motion is twofold: first, does application of the *Gates* standard, rather than the *Aguilar–Spinelli* standard, lead to the conclusion that the warrant was unsupported by probable cause; and second, if so, does the good faith exception articulated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405 (1984), apply to avoid suppression. As explained below, resolution of the first issue is difficult and close. Indeed, precisely because that determination is so close I find that the *Leon* exception should apply and that the evidence seized pursuant to the warrant should not be suppressed.

The allegations supporting the challenged warrant are troubling because they rest in such large measure on the actions of two unidentified individuals, UP–1 and UP–2, about whom the application says very little, including the nature of their relationship, if any, to the informant, to

"June" at 263 Emerson Street and to one another. Indeed, the affidavit says nothing at all about their reliability. Moreover, the actions that lie at the heart of the application—their alleged purchases of cocaine inside the downstairs apartment of 263 Emerson Street—were not witnessed either directly or through audio or video surveillance by law enforcement officers or reliable informants. Further, no indication exists in the application that either UP–1 or UP–2 described to the informant the events that had occurred inside the apartment or that either was searched for contraband prior to entering 263 Emerson Street.

In analyzing the adequacy of Hill's affidavit, I find it helpful to place its assertions, which rest so critically on the two unidentified individuals, along the continuum of allegations that range from deficient to plainly adequate. On the one hand, for example, where a reliable informant asserts that drugs are being sold from a particular apartment in a multi-family residence and that his basis of knowledge is merely his observation of an unidentified individual entering that apartment and exiting some time later with a package of narcotics, such assertions would fall short of establishing probable cause to search that apartment. In the absence of further information, the possibility could not reasonably be discounted that the individual possessed the narcotics when he entered the apartment or that he obtained them after entering the apartment but from some location other than the apartment he entered.

Of course, it does not follow from this example that any warrant based upon information concerning narcotics sales that were neither directly made nor observed by agents or reliable informants is necessarily deficient. For example, posit an affidavit that describes a reliable informant's assertion that drugs are being sold from a detached, single family house; the basis for his belief is his observation over a short period of time of numerous individuals entering the house and exiting moments later carrying small bags of narcotics bearing an identical, unique marking. The affidavit further recounts the informant's statement that each individual informed him that he had purchased drugs inside the house. Moreover, the police officer applying for the search warrant also describes in his affidavit his simultaneous observations of multiple people entering the house and exiting moments later carrying small bags. In this scenario, although the informant's assertion that drugs were being sold from that house is not based upon personal knowledge of what transpired inside the house, that conclusion is nonetheless reasonable based upon the totality of the circumstances. *See, e.g., United States v. Artez,* 389 F.3d 1106, 1115 (10th Cir.2004) (upholding probable cause for warrant based upon purchases made by "unwitting informant," whose reliability was not established); *United States v. Jordan,* 999 F.2d 11, 14 (1st Cir.1993) (upholding probable cause for warrant based upon purchases made by two identified individuals, whose reliability was not established, at the behest of a reliable informant); *United States v. Blackwood,* 913 F.2d 139, 143 (4th Cir. 1990) (upholding probable cause for warrant based upon single narcotics purchase made by unidentified individual, whose reliability was not established, at the behest of a reliable informant). *See also United States v. Lattner,* 385 F.3d 947, 952–53 (6th Cir.2004) (finding probable cause for search warrant based in part upon officer's observations of "several people visiting the residence, staying a few minutes, and then leaving with small packages"), *cert. denied,* 543 U.S. 1095, 125 S.Ct. 979, 160 L.Ed.2d 908 (2005). The question posed by this

case is whether the weight of the allegations contained in Hill's affidavit—falling as it does somewhere in the spectrum between these two examples—is substantial enough to constitute probable cause.

Although this Court has not found any controlling decisions with facts similar to those before it in this case, several other Circuits have addressed comparable, though not identical, factual scenarios and have found them adequate to establish probable cause. For example, in *United States v. Artez*, 389 F.3d at 1112–13, the Tenth Circuit addressed the probable cause of a warrant issued for the defendant's home based upon two narcotics purchases made by "an unwitting informant" from the defendant's home. Specifically, as the affidavit in support of the warrant detailed, the affiant, who was a law enforcement officer, was contacted by a confidential informant who claimed to have information about the defendant's sales of methamphetamine from his home. The informant explained that he could not purchase narcotics directly from the defendant, but could do so through "an unwitting informant." *Id.* at 1109. Following that information, the affiant supervised two controlled purchases from the defendant's home, both of which were conducted in essentially the same manner. The officer searched the confidential informant, provided him with cash, and followed him to the residence of the unwitting witness. The unwitting witness entered the confidential informant's car, and they drove to the defendant's residence. When they arrived, the officer observed the unwitting witness approach the residence and enter. Approximately twenty minutes later, the unwitting witness reemerged and returned to the informant's vehicle. The informant drove the unwitting witness back to his residence before meeting with the officer and providing him with the narcotics reportedly purchased by the witness from the defendant. *Id.* at 1110.

In addition, the officer's affidavit recited that he had conducted surveillance of the defendant's home following the purchases and had observed several individuals arrive and stay at the residence for only short periods of time. *Id.* The affidavit also disclosed that several of the individuals who lived in or visited the defendant's home had convictions for narcotics offenses. *Id.*

Reversing the lower court's determination in *Artez*, the Tenth Circuit upheld the search warrant for the defendant's residence. According to the court, although the information in the affidavit "did not eliminate the risk that the confidential informant was lying or was in error, … viewing the totality of the circumstances, … the information contained in the affidavit sufficiently reduced the probability." *Id.* at 1115. The court thus concluded that the issuing judge was justified in determining that a substantial basis existed to find probable cause to search the defendant's residence. *Id.*

In addition to the Tenth Circuit, the First and Fourth Circuits also have upheld search warrants based upon controlled purchases made by "unwitting" third-parties. *See United States v. Jordan*, 999 F.2d at 12–14; *United States v. Blackwood*, 913 F.2d at 142–43. In *Jordan*, the First Circuit determined that probable cause existed to support the warrant that had been issued for the defendant's home. 999 F.2d at 11. The warrant was based upon a law enforcement officer's affidavit detailing two purchases of narcotics from the defendant's residence by identified, but apparently unwitting, individuals. In each instance, under the affiant's surveillance, a reliable confidential informant met with one of the individuals at a rest stop and provided him with funds with which to

purchase narcotics. That individual then drove to another individual's residence, and the two individuals then proceeded to the defendant's home. After leaving the defendant's residence, the two individuals met with the informant at a local school and delivered the narcotics, which one of the individuals represented had been purchased at the defendant's home. *Id.* at 12–13. On these facts, the First Circuit noted that although "nothing in the ... affidavit excluded the possibility that the marijuana may have come from some place other than the [defendant's] residence[,] ... viewing the totality of the circumstances related in the affidavit, rather than judging bits and pieces of information in isolation, the affidavit was sufficient to support the issuing judge's 'common-sense' determination of probable cause." *Id.* at 13 (internal citations and quotations omitted).

Indeed, the Fourth Circuit in *Blackwood* upheld a warrant that was based upon only one purchase of narcotics from the defendant's residence by an unidentified individual acting as an intermediary between a reliable confidential informant and the defendant. 913 F.2d at 139. There, the Court noted that the transaction had occurred in the manner that the informant had described that it would and that, consistent with the description, the affiant had observed the informant go to the intermediary's apartment, the intermediary leave the apartment, enter the defendant's apartment and return to his apartment, and the informant thereafter surrender a package of cocaine. *Id.* at 142. Relying heavily on the affiant's observations, the Fourth Circuit rejected the defendant's probable cause challenge, finding that "[n]one of [the defendant's] contentions cast any serious doubt on whether the magistrate could have concluded that there was a 'fair probability' that cocaine would

be found at [the defendant's] residence." *Id.* at 142–43.

Judged against this pertinent, though not controlling, authority, I find that the totality of the circumstances in this case include the following relevant facts. Two different individuals, UP–1 and UP–2, agreed to purchase drugs from "June" at 263 Emerson Street. In the case of UP–1, it was he who suggested that he purchase the drugs from June at that address; in the case of UP–2, it was the informant who suggested that he purchase drugs from June at that address. Each also agreed to purchase the same quantity, a "31," or thirty-one grams of cocaine. Following their discussions with the informant, each entered the agreed-upon address at 263 Emerson Street by knocking on the same door, which Hill affirmed led directly into the downstairs apartment. Both were inside for only a few minutes, and both returned carrying a clear, knotted plastic bag containing approximately thirty-one grams of cocaine. In both instances, the informant and Officer Hill observed the individual enter and exit the apartment, and the informant received the package of narcotics from each individual as soon as he returned to the informant's car upon exiting the apartment. In neither case, as far as the affidavit discloses, did the individual describe to the informant what had happened inside the apartment.

Several concerns animate this Court's consideration of whether Hill's affidavit establishes probable cause for the warrant. First is the absence of evidence to show that the unidentified individuals did not possess narcotics when they entered the apartment. As the affidavit discloses, although the informant was searched for narcotics, neither UP–1 nor UP–2 was searched, presumably because such a search would have revealed that the informant was working with law enforcement.

Although the fact that they were not searched permits the possibility that they possessed the drugs they turned over to the informant before they ever entered the apartment, that possibility is substantially undercut by the unique facts of this case. Here, on two separate occasions, sixteen days apart, two different individuals agreed to purchase thirty-one grams of cocaine for the informant and, consistent with the agreement, entered and exited the same apartment and thereafter provided him the very quantity of cocaine that he had requested, packaged in a similar fashion.

A second concern is the absence of any information concerning the reliability of either UP–1 or UP–2. One of the significant purposes that is served by proof of an informant's reliability is to ensure that the informant who provides information about another's alleged criminal activity is not falsifying or misrepresenting that information in order to gain a personal benefit or to jeopardize an individual towards whom he harbors some animosity. While I remain troubled by the dearth of information concerning what transpired behind the eastern door of 263 Emerson Street, I do not consider significant the possibility that UP–1 or UP–2 were motivated by improper purposes. Here, UP–1 and UP–2 were each described as an "unwitting" person. "Unwitting," according to its common usage, means "not knowing or aware; unconscious." Webster's New World Dictionary (2d ed.1984). In other words, assuming as I do that neither UP–1 or UP–2 knew the informant was acting at the behest of law enforcement, neither would have had any apparent incentive to fabricate the appearance that they had purchased drugs from the downstairs apartment.

The concern that troubles me the most is whether the application provides probable cause to believe that cocaine would be found inside the apartment that UP–1 and UP–2 entered. Again, the affidavit is absolutely silent as to what transpired during the "few minutes" that UP–1 and UP–2 were inside. Moreover, whether a few minutes means as few as two or as many as fifteen or more is significant. If the former, it may be reasonable to conclude that insufficient time existed to obtain the drugs from anywhere other than inside the apartment; if the latter, no such conclusion may be reasonable. Of course, had the affidavit included descriptions by the individuals to the informant of sales inside the apartment, and had those descriptions been consistent with each other, this concern may have been alleviated. In the absence of corroborating accounts, however, the question whether probable cause existed to believe that drugs were inside the apartment (rather than in another apartment in the building or in a location outside the apartment, such as a shed or automobile) seems to me to be a much closer one.

Rather than resolving this close question, I turn instead to the applicability of the good faith exception articulated in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405 (1984). In sum, I conclude that the outcome of the probable cause challenge is so close, whether or not probable cause is found, that the agents were entitled to rely reasonably upon the issuing judge's determination of that very question. *See United States v. Cancelmo,* 64 F.3d 804, 807 (2d Cir.1995) (acknowledging that question of whether probable cause existed was a close one and upholding search based upon good faith exception); *United States v. Moore,* 968 F.2d 216, 222 (2d Cir.) (declining to resolve difficult question of whether probable cause existed based upon application of the good faith exception), *cert. denied,* 506 U.S. 980, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992); *United*

*States v. Fama,* 758 F.2d 834, 835 (2d Cir.1985) (same).

■ In *Leon,* the Supreme Court held that the Fourth Amendment exclusionary rule should not be applied to evidence obtained by a police officer whose reliance on a search warrant issued by a neutral magistrate was based on "objective good faith," even though the warrant itself might ultimately be found to be defective. 468 U.S. at 918–23, 104 S.Ct. 3405; *United States v. Salameh,* 152 F.3d 88, 114 (2d Cir.1998), *cert. denied,* 525 U.S. 1112, 119 S.Ct. 885, 142 L.Ed.2d 785 (1999); *United States v. Benedict,* 104 F.Supp.2d 175, 182 (W.D.N.Y.2000). The rationale underlying this good-faith exception is that the exclusionary rule "cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." *Leon,* 468 U.S. at 919, 104 S.Ct. 3405.

The Court in *Leon* identified four situations in which the good faith exception is inapplicable. Specifically, an executing officer's reliance on a search warrant will not be deemed to have been in good faith:

(1) where the issuing magistrate had been knowingly misled;

(2) where the issuing magistrate wholly abandoned his or her judicial role;

(3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and

(4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*Id.* at 923, 104 S.Ct. 3405. *See United States v. Cancelmo,* 64 F.3d at 807 (citations omitted).

Sykes has not offered any evidence to demonstrate that the issuing state court magistrate was knowingly misled or that the warrant was facially deficient. Rather, Sykes argues that the warrant application was so lacking in probable cause that reliance upon it was unreasonable. To the contrary, I find that the question of probable cause was such a close one that the application cannot be viewed as so lacking in indicia of probable cause, if in fact probable cause is lacking at all, that the searching officers acted unreasonably in relying upon it.

Moreover, to the extent Sykes summarily states that the issuing magistrate must have wholly abandoned his judicial role simply because he had previously sentenced Sykes on a prior felony conviction, such claim is unavailing. Sykes has failed to offer any evidence whatsoever to support his assumption. It is therefore the recommendation of this Court that Sykes's motion to suppress evidence seized from 263 Emerson Street on the grounds that the search warrant was unsupported by probable cause be denied. *See United States v. Williams,* 181 F.Supp.2d 267, 276 (S.D.N.Y.2001) (*Leon* applies to preserve evidence from suppression in federal prosecution notwithstanding previous decision by state court suppressing the same evidence).

### *CONCLUSION*

For the foregoing reasons, it is my recommendation that defendant's motions to suppress evidence seized from 263 Emerson Street because the search warrant lacked probable cause (Docket #18) be **DENIED**.

Oct. 27, 2005.